THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RYAN
M. KELLEY, Defendant-Appellant.

Second District    No. 2—01—1471

Opinion filed April 15, 2003.—Rehearing denied May 21, 2003.

274

Christopher A. DeRango, of Sreenan & Cain, P.C., of Rockford, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BYRNE delivered the opinion of the court:

Defendant, Ryan M. Kelley, was charged with aggravated unlawful use of a weapon (UUW) (720 ILCS 5/24—1.6(a) (West 2000)) and involuntary manslaughter (720 ILCS 5/9—3(a) (West 2000)) for shooting and killing his friend, Tyler Johnson, on August 7, 2000. Defendant filed a motion for a directed verdict following the close of the State's case, and the trial court denied the motion. A jury found defendant guilty of aggravated UUW and not guilty of involuntary manslaughter. The trial court imposed a sentence of 60 days' periodic imprisonment, 30 months' probation, and 200 hours' community service. On appeal, defendant argues that the trial court erroneously denied his motion for a directed verdict on the aggravated UUW charge because the State failed to prove that he was not on his land, in his abode, or in his fixed place of business while he possessed the weapon. We affirm.

## FACTS

We set forth only the facts relevant to this appeal. At trial, Melissa Ramstedt, a friend of defendant, testified to who resided in the building where the shooting occurred. During the State's case in chief, Melissa and the prosecutor engaged in the following colloquy:

"Q. And I'm gonna direct your attention to August 7th of 2000. Where did you live at that time?

A. 1004 Luther Avenue.

Q. And where in the house did you live?

A. In the basement.

Q. Did you live there with anyone?

A. With Timothy Strahorn.

Q. And what is your—at that time were you dating Tim Strahorn?

A. Yes.

Q. And who else lived in the house?

A. His mother, Linda Strahorn, and occasional [*sic*] his sister, Kristin Strahorn. She went to college."

In her subsequent testimony, Melissa repeatedly referred to the premises as "Tim's house." On the night of the incident, Melissa, Tim, and Robby Thor, another friend, were driving home from a restaurant when they encountered defendant and the victim driving in another car on Luther and Guilford Avenues. The two groups went to 1004 Luther Avenue and exited their cars, and Melissa immediately entered the basement. The boys chatted outside for a couple of minutes before they also went to the basement, where defendant displayed a handgun and asked Melissa whether she had seen it before. Melissa replied that she had not seen the gun and "jokingly" told defendant to put it away. The victim joked that the gun was "pointing right at [him]" and told defendant to put it away because defendant did not "know what to do with [the] thing anyway." Melissa was sitting near defendant and saw that the gun was loaded as defendant spun the cylinder. No one seriously objected to defendant playing with the gun.

Five minutes later, defendant walked toward the kitchen doorway in the basement and turned quickly toward the group to say something. As defendant turned, he raised his hand from his side, and the gun fired once. It appeared that defendant did not intentionally aim at the victim or anyone else. Melissa initially thought that the bullet hit the bed, but she soon saw that the victim had been shot. Defendant "just stood there," looking like "a complete ghost." Then the victim stood, walked three feet, and collapsed to the floor. Melissa panicked and fled to a neighbor's house as defendant and the others assisted the victim.

Tim and Linda Strahorn testified that they both lived with Melissa at 1004 Luther Avenue. Tim stated that he first saw the gun when defendant pulled it from his waistband while in the basement. Linda testified that her daughter, Kristin, was present in an upstairs bedroom on the night of the shooting. Linda, Tim, and Melissa did not testify that defendant did not reside or work there, and they did not identify who owned the premises.

Detective Robert Redmond testified that, after responding to the shooting at 1004 Luther Avenue, he went to "[defendant's] house" where defendant's father gave Redmond a gun case. Several officers and a medical expert testified to other events following the shooting, and the State rested its case.

Defense counsel then filed two written motions for a directed verdict, and each motion was directed to one of the charged offenses.

Counsel initially noted that defendant could not be convicted of aggravated UUW if the State failed to prove that he was not in his abode or fixed place of business at the time of the offense. Counsel then argued that "[n]obody said anything about whether [defendant] lived at that house, and certainly nobody said anything about whether or not a business was operated out of that house that [defendant] might somehow be involved in." The court denied the motions with little comment, and defendant proceeded with his case.

Brian Fey testified that he was the manager at an Applebee's restaurant in Rockford where defendant worked. Fey stated that defendant had a reputation for being careful and reliable. On cross-examination, Fey stated that he and other employees knew defendant well because he was a "full-time" employee.

Defendant testified that he had just turned 17 years old at the time of the shooting and that he had been good friends with the victim since the two were in seventh grade. He stated that, after working at Applebee's on the night of the shooting, he "went home and called Tyler and changed clothes *** and talked to [his] dad for a little while." Before he "left the house," defendant grabbed a gun. Defendant did not identify where he resided. However, defendant referred to the building at 1004 Luther Avenue as "Tim's house," and he testified that Tim invited him to enter the home on the night of the shooting. The group entered the basement "where Tim and Melissa ha[d] their room and basically where they live[d] inside the house."

Defendant explained his reasons for obtaining the gun. Several months before the incident, defendant contacted a former girlfriend upon returning from Arizona where he had been living. Someone threw a brick through defendant's bedroom window, and defendant suspected that the girl's current boyfriend was responsible. Defendant told his father about the brick-throwing incident, but he did not contact the police. Five days before the shooting, defendant purchased the gun to scare anyone who might threaten him. Defendant never intended to shoot the gun, and he never had a disagreement with the victim.

At the close of all of the evidence, defense counsel again argued for a directed verdict, and the trial court denied the motion. The jury found defendant guilty of aggravated UUW, the court imposed the sentence, and this timely appeal followed.

## ANALYSIS

■ Defendant contends that the trial court erroneously denied his motion for a directed verdict at the close of the State's case. The statutory authority for directed verdicts is found in section 115—4(k) of the Code of Criminal Procedure of 1963, which provides:

"When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." 725 ILCS 5/115—4(k) (West 2000).

"A motion for a directed verdict asserts only that as a matter of law the evidence is insufficient to support a finding or verdict of guilty. The [motion] requires the trial court to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond reasonable doubt, considering the evidence most strongly in the People's favor." *People v. Withers*, 87 Ill. 2d 224, 230-31 (1981), citing *People v. Tibbs*, 57 Ill. App. 3d 1007, 1012-13 (1978). In moving for a directed verdict, the defendant admits the truth of the facts stated in the State's evidence for purposes of the motion. *Tibbs*, 57 Ill. App. 3d at 1012. A motion for a directed verdict presents a question of law, which the appellate court reviews *de novo*. *Withers*, 87 Ill. 2d at 230.

■ It is well settled that a defendant who chooses to present evidence after the denial of his motion for a directed verdict at the close of the State's case waives any error in the trial court's ruling on the motion unless he renews the motion at the close of all the evidence. *People v. DeBartolo*, 242 Ill. App. 3d 811, 816 (1993). The State argues that defendant waived his claim for a directed verdict because he failed to renew his motion at the close of all the evidence.

■ After the State completed its case in chief, defendant filed two written motions for a directed verdict. The defense presented evidence after the denial of the motions, but defense counsel orally moved for a directed verdict at the close of all the evidence. We conclude that counsel's brief oral argument adequately renewed the motions to preserve the issues on appeal. See *People v. Connolly*, 322 Ill. App. 3d 905, 913-14 (2001) (even though defense counsel failed to formally renew his motion for a directed verdict, he preserved the issue at the close of the case by referring to the factual arguments made in support of the original motion).

■ Defendant was charged by indictment with aggravated UUW in that he "knowingly carried on or about his person while not on his own land, in his own abode, or fixed place of business a revolver, and the firearm was uncased, loaded, and immediately accessible at the time of the offense." See 720 ILCS 5/24—1.6(a) (West 2000). The statute defining the crime provides in relevant part:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or

concealed on or about his or her person *except when on his or her land or in his or her abode or fixed place of business* any pistol, revolver, stun gun or taser or other firearm; ***

*** and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense[.]" (Emphasis added.) 720 ILCS 5/24—1.6(a) (West 2000).

Because the legislature included the above-emphasized exceptions within the statutory definition of the offense of aggravated UUW, the State bears the burden of disproving beyond a reasonable doubt the existence of the exceptions to sustain a conviction for the offense. *People v. Laubscher*, 183 Ill. 2d 330, 335 (1998). In meeting this burden, the State may rely upon circumstantial evidence if it provides proof beyond a reasonable doubt of every element of the crime charged. However, there must be some evidence to create a reasonable inference of the defendant's guilt; the State may not leave essential elements of the crime to conjecture or assumption. *Laubscher*, 183 Ill. 2d at 335-36.

Defendant argues that his aggravated UUW conviction must be reversed because the State failed to prove that he was not on his land, in his abode, or in his fixed place of business at the time of the shooting. Defendant concedes that the State proved the remaining elements of the offense beyond a reasonable doubt. The State responds that it presented circumstantial evidence that "defendant had no connection to the property at 1004 Luther Avenue, where the offense occurred, except as an invited guest."

■ In determining whether the trial court erroneously denied defendant's motion for a directed verdict on the aggravated UUW charge, we would ordinarily be required to decide the threshold issue of the scope of the evidence to be considered. In arguing that it met its burden of proof, the State cites the testimony of Fey and defendant that was introduced during defendant's case. Defendant argues that this testimony should not be considered because it was presented after he moved for a directed verdict.

In *People v. Washington*, 23 Ill. 2d 546 (1962), the defendant moved for a finding of not guilty at the close of the State's evidence, and the motion was denied. The defendant then took the stand and offered testimony that strengthened the State's case. *Washington*, 23 Ill. 2d at 547. At the close of all the evidence, the defendant again moved for a finding of not guilty, and the second motion was denied. On appeal to the supreme court, the defendant argued that the trial court erroneously denied his first motion and that a reviewing court should

consider only the evidence that had been introduced "up to the time the motion was made." *Washington*, 23 Ill. 2d at 548. The supreme court rejected the argument, noting the well-settled rule that in civil cases "a motion for a directed verdict made at the close of the plaintiff's case is *waived* when the defendant introduces evidence after the motion has been denied." (Emphasis added.) *Washington*, 23 Ill. 2d at 548, citing *Joliet, Aurora & Northern Ry. Co. v. Velie*, 140 Ill. 59 (1892). The court did not comment further on the correctness of the denial of the first motion and instead decided the defendant's alternative claim that was directed to the sufficiency of the evidence. *Washington*, 23 Ill. 2d at 549.

Ten years later, the supreme court revisited the issue and held that "[i]n both criminal and civil cases a defendant waives his right to a directed verdict when he introduces evidence after his motion has been denied." *People ex rel. Kubala v. Woods*, 52 Ill. 2d 48, 54 (1972), citing *Washington*, 23 Ill. 2d at 549. One could infer that, when a defendant appeals the denial of a motion for a directed verdict presented at the close of the State's case, *Washington* and *Kubala* require the reviewing court to examine all of the trial evidence, including any evidence presented by the defendant after the denial of the original motion. The underlying rationale of this approach is that, if a defendant may benefit from favorable evidence he introduces after the State closes its case in chief, he should also bear the risk that unfavorable evidence might be elicited.

Among the remaining cases we have reviewed, *Connolly*, 322 Ill. App. 3d at 915, addresses the issue most directly, but it appears to contradict *Kubala* and *Washington*. In *Connolly*, this court noted that a general analysis of the sufficiency of the evidence supporting a guilty finding requires the consideration of all of the evidence presented at trial, including the evidence adduced by the defendant during his case. *Connolly* also held that, when reviewing the denial of a motion for a directed verdict or a finding of not guilty, a reviewing court must examine only the evidence introduced by the State during its case in chief, even if the defendant presented evidence after the denial of the motion. *Connolly*, 322 Ill. App. 3d at 918-19.

In announcing the rule, *Connolly*, 322 Ill. App. 3d at 913, cited *DeBartolo*, which states that, if a defendant introduces evidence after the denial of his motion for a directed verdict, he must "renew" the motion at the close of all of the evidence. *DeBartolo*, 242 Ill. App. 3d at 816. This court's use of the term "renew" in *DeBartolo* suggests that the motion following the close of the case is actually a motion to reconsider the denial of the original motion and that the two motions are identical in scope.

Viewing this court's recent decision in *Connolly* in light of the supreme court's 30-year silence on the issue, we find it unclear whether a reviewing court should consider all of the evidence presented at trial, including the evidence presented during the defendant's case, when reviewing the denial of a motion for a directed verdict or directed finding at the close of the State's case. However, we need not reconcile *Connolly, Kubala,* and *Washington* because we dispose of this appeal on other grounds.

When the trial judge denied the motion for a directed verdict at the close of the State's case, she broadly stated that "there was sufficient testimony" to convict. However, at trial and on appeal, the parties focus exclusively on defendant's possession of the gun in the basement of 1004 Luther Avenue, and by doing so, they mistakenly presume that defendant's relationship to the premises is dispositive of the issue of guilt.

The indictment broadly charged defendant with knowingly carrying the revolver on or about his person, and defendant loses sight that he could be found guilty of aggravated UUW based on his conduct at a location other than the scene of the shooting. We are compelled to examine this alternative theory of guilt because the trial judge's broad statement in denying the motion implies that she considered this type of conduct even though the parties did not. The State has not addressed the issue merely because the narrowly tailored argument of defendant's motion has not required it. We may affirm the result below on any basis that is supported by the record (*People v. Huff*, 195 Ill. 2d 87, 91 (2001)), and we therefore conclude that our analysis would be incomplete without examining defendant's conduct before his arrival at the residence.

During its case in chief, the State established through Melissa's testimony that defendant drove on a public road on his way to "Tim's house." Soon after defendant exited his vehicle and entered the basement at the residence, he displayed the handgun, which he carried in his waistband. This circumstantial evidence proves that, while defendant was traveling on Luther Avenue, he carried the revolver on or about his person while not on his land, in his abode, or in his fixed place of business. At that time, the gun was uncased, loaded, and immediately accessible in defendant's waistband. See 720 ILCS 5/24—1.6(a) (West 2000). Although defendant was not charged with carrying the weapon "in any vehicle," we conclude that his actual possession of the gun in his car on Luther Avenue satisfies the element of carrying a revolver "on or about his person" because it was in his waistband while he drove. After viewing the evidence in the light most favorable to the prosecution, we conclude that the State negated beyond a

reasonable doubt the exceptions set forth in the offense of aggravated UUW. Therefore, the trial court correctly denied defendant's motion for a directed verdict at the close of the State's case.

For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

McLAREN and O'MALLEY, JJ., concur.