THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKEY PULLEY, Defendant-Appellant.

First District (3rd Division)   No. 1—02—2023

Opinion filed January 21, 2004.—Rehearing denied December 22, 2003.

Edwin A. Burnette, Public Defender, of Chicago (Adrienne N. River, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from defendant's conviction for aggravated unlawful use of a weapon (UUW) (720 ILCS 5/24—1.6(a)(1), (a)(3)(A) (West 2000)) following a jury trial. Defendant was sentenced to Cook County boot camp.

At trial, Chicago police officer Alan Hadac testified that for the past three years he had been assigned to the Chicago Housing Authority (CHA) and worked at a police building located at 365 West Oak Street, which is part of the Cabrini Green housing complex. He described the duties of a Chicago police officer assigned to CHA public housing as being "strictly assigned to patrol housing sites federally funded throughout *** Chicago, whether it be Cabrini Green, Rockwell Gardens, Robert Taylor."

In the early morning hours of July 30, 2001, Officer Hadac was standing in a large parking lot behind 365 West Oak, commonly referred to as the "Blacktop," where police officers often parked their vehicles. The Blacktop was bordered by four buildings and a youth center. Two of the buildings, 911-23 Sedgwick Avenue and 929-39 Hudson Avenue, are CHA buildings. According to Officer Hadac, the CHA had recently installed new lighting in the area. As he conversed with Officers Simon, McCormick and Carroll, Officer Hadac heard gunfire and turned to look in the direction of where the shots had been fired. He saw defendant standing at the rear of 929 Hudson with his right arm extended and a gun in his hand. Defendant fired the weapon several times. Officer Hadac ran towards defendant, who went into 929 Hudson, while Officers McCormick and Carroll entered a nearby vehicle.

A chase ensued when defendant ran through the building at 929 Hudson and out onto the street. As defendant and Officer Hadac turned the corner onto Locust Street, Officer Hadac observed defendant toss the gun over a nearby fence. Hadac alerted Officers McCormick and Carroll that he had seen defendant throw the weapon to the ground and continued his pursuit until he apprehended him as he was attempting to enter an apartment on the seventh floor of the CHA building at 939 Hudson Avenue.

Chicago police officer Thomas Carroll testified that he also worked out of the CHA police district at 365 West Oak. He corroborated Of-

ficer Hadac's testimony regarding the events surrounding the firing of the gun and the subsequent apprehension of defendant.

Chicago police officer Brennan McCormick testified that on the morning of July 30, 2001, he was in the CHA parking lot behind 365 West Oak with two CHA police officers when he heard gunshots. He observed defendant "with a gun in his hand outside of the housing project [at] *** 929." Officer McCormick identified defendant as the shooter and subsequently recovered a 9-millimeter automatic weapon that defendant had thrown to the ground.

At the conclusion of the trial, the jury found defendant guilty of aggravated UUW and he was sentenced to Cook County boot camp.

On appeal, defendant has raised the following issues for our review: (1) whether he was proven guilty of the offense beyond a reasonable doubt; (2) whether the penalty for aggravated UUW is unconstitutionally disproportionate to the penalty for UUW; (3) whether the aggravated UUW statute violates due process by allowing a felony conviction based upon innocent conduct; and (4) whether the aggravated UUW statute violates due process and equal protection in the absence of a rational basis to differentiate between property owners and renters.

Defendant initially contends that his conviction for aggravated UUW must be reversed because the State failed to prove an essential element of the offense, *i.e.*, that he was not on his own land at the time that he possessed the firearm.

■ When a defendant challenges the sufficiency of the evidence, the question on review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). A court of review may not substitute its judgment for that of the trier of fact and will not reverse a conviction unless the evidence is so unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Lundy*, 334 Ill. App. 3d 819, 825 (2002).

■ The aggravated UUW statute provides, in pertinent part:
"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person *except when on his or her land or in his or her abode or fixed place of business* any pistol, revolver, stun gun or taser or other firearm;
***; and
(3) One of the following factors is present:
(A) the firearm possessed was uncased, loaded and im-

mediately accessible at the time of the offense[.]'' (Emphasis added.) 720 ILCS 5/24—1.6(a)(1), (a)(3)(A) (West 2000).

As the above-italicized exception exists as part of the body of this offense, the State bears the burden of disproving beyond a reasonable doubt the existence of this exception in order to sustain the defendant's conviction. *People v. Laubscher*, 183 Ill. 2d 330, 335 (1998). In meeting this burden, the State may rely upon circumstantial evidence if it provides proof beyond a reasonable doubt that the defendant was not on his land or in his abode or fixed place of business at the time of the offense. *Laubscher*, 183 Ill. 2d at 335. However, there must be some evidence to create a reasonable inference that the exception exists as the State may not leave essential elements of the offense to conjecture or assumption. *Laubscher*, 183 Ill. 2d at 335-36.

In *Laubscher*, a case relied upon by defendant, the complainant and defendant resided in different units of the same apartment building. *Laubscher*, 183 Ill. 2d at 333. The defendant, who had a gun on his person, had an argument with two men on the lawn area of the apartment complex. *Laubscher*, 183 Ill. 2d at 333-34. The complainant intervened and seized a handgun from the defendant's waistband, the police were called, and defendant was arrested. *Laubscher*, 183 Ill. 2d at 333-34. The supreme court affirmed the appellate court's reversal of the defendant's UUW conviction after concluding that there was no evidentiary basis for the trial court to infer that the defendant did not have an ownership interest in the premises. *Laubscher*, 183 Ill. 2d at 336. Although the complainant loosely referred to occupants of the building as " 'tenants,' " the only evidence offered by the State of the defendant's connection with the property was that he " 'lived in the building.' " *Laubscher*, 183 Ill. 2d at 336. That evidence was insufficient to establish beyond a reasonable doubt the defendant's particular interest in the premises. *Laubscher*, 183 Ill. 2d at 336. The supreme court affirmed the appellate court's finding that "although it was not unreasonable for the trial court to *assume* defendant had no ownership interest in the premises, permitting such an inference without any evidentiary basis would effectively shift the burden to defendant to prove that he was on his land." (Emphasis in original.) *Laubscher*, 183 Ill. 2d at 336.

■ Applying the principles set forth above, we find that the State presented sufficient evidence to establish that defendant was not on his own land at the time of the offense. Officers Hadac and Carroll, both assigned to the CHA for a period of years, testified that defendant was standing at 929 Hudson when he fired several shots from a gun. Defendant subsequently ran through 929 Hudson with the gun in his hand and was ultimately apprehended when he attempted to gain ac-

cess to an apartment on the seventh floor of the CHA building located at 939 Hudson. Unlike in *Laubscher*, Officer Hadac specifically identified the premises at 929 and 939 Hudson as CHA buildings. Officer Hadac further testified that he was assigned to a nearby police station which was part of a CHA public housing complex and described for the jury the duties of a CHA police officer as being responsible for "strictly patrolling federally funded housing sites." Moreover, Officer McCormick testified that defendant was standing with a gun in his hand outside of the housing project at 929 Hudson. Viewing the evidence in the light most favorable to the State, we find that a reasonable trier of fact could have inferred that defendant was not on his own land at the time of the offense.

Next, defendant contends that the penalty for aggravated UUW, based on the conduct described in sections 24—1.6(a)(1) and (a)(3)(A) of the aggravated UUW statute, is unconstitutionally disproportionate to the penalty for UUW.

Although defendant failed to raise this issue in the trial court, he has the right to challenge the constitutionality of a statute for the first time on appeal. *People v. Christy*, 139 Ill. 2d 172, 176 (1990). It is well settled that statutes are presumed to be constitutional and that the party challenging the statute has the burden of clearly showing the alleged constitutional violation. *People v. Moss*, 206 Ill. 2d 503, 519-20 (2003). It is our responsibility to construe a statute in a manner that upholds its validity and constitutionality if it can reasonably be done. *Moss*, 206 Ill. 2d at 520. Here, we will only consider those sections of the aggravated UUW statute that apply to this defendant and not those that might apply to others in different circumstances. See *People v. McGee*, 341 Ill. App. 3d 1029, 1032 (2003).

Article I, section 11, of the Illinois Constitution, commonly referred to as the proportionate penalties clause, provides, in pertinent part, that "[a]ll penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11.

Our supreme court has identified three ways in which a violation of the proportionate penalties clause may occur. First, where the punishment for a particular offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. Second, where similar offenses are compared and conduct that creates a less serious threat to the public health and safety is punished more harshly. Third, where identical offenses result in different sentences. *People v. Davis*, 177 Ill. 2d 495, 503-04 (1997). Defendant's challenge is based on the second and third types of violation.

We begin our analysis by setting forth the UUW statute, a Class A misdemeanor (720 ILCS 5/24—1(a)(4) (West 2000)), which provides that a person commits the offense when he:

"Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a)(4) does not apply to or affect transportation of weapons that meet one of the following conditions:

(i) are broken down in a non-functioning state; or

(ii) are not immediately accessible; or

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card[.]" 720 ILCS 5/24—1(a)(4) (West 2000).

Defendant committed the offense of aggravated UUW, a Class 4 felony, when he "knowingly carried on or about his person, a firearm, at a time when he was not on his land or in his own abode or fixed place of business and the firearm was uncased, loaded and immediately accessible at the time of the offense."

■ We initially address defendant's contention that the constitutional infirmity of the aggravated UUW statute is that it provides a harsher penalty for conduct that is identical to that proscribed by the UUW statute.

An individual who has in his possession a gun that is unloaded but not in a case and readily accessible could be charged with UUW but could not be charged with aggravated UUW unless the gun was accessible, uncased, and loaded. Here, had defendant's gun not been loaded, he could only have been charged with UUW, not aggravated UUW. Therefore, we find that the statutes are not identical. See *McGee*, 341 Ill. App. 3d at 1035 (where the aggravated UUW statute was found not to be identical to the UUW statute for purposes of the proportionate penalties clause).

Likewise, we find defendant's contention that the aggravated UUW statute punishes more severely conduct that creates a less serious threat to public health and safety than UUW to be without merit.

■ When a defendant raises a proportionality challenge to a statute based upon a lesser penalty imposed for a similar but allegedly more serious offense, a court of review must conduct a cross-comparison analysis involving a two-step inquiry: (1) whether the purposes of the compared offenses are similar such that a comparative analysis is appropriate; and (2) if the purposes are related, whether the offense with the harsher penalty is more serious than the offense with the less severe penalty. *Moss*, 206 Ill. 2d at 522-23, citing *Davis*, 177 Ill. 2d at 506.

■ The legislative intent behind the UUW statute was to regulate

the possession and use of weapons for the safety and good order of society. See *People v. Williams*, 60 Ill. App. 3d 726, 727 (1978). The "legislature's purpose in enacting the [aggravated UUW] statute was to prevent any person from carrying a loaded weapon on his person or in his vehicle due to 'the inherent dangers to police officers and the general public.' " *People v. Marin*, 342 Ill. App. 3d 716, 724 (2003), quoting *People v. Grant*, 339 Ill. App. 3d 792, 806 (2003), and citing *McGee*, 341 Ill. App. 3d at 1037.

Therefore, the purpose of both the UUW statute and the aggravated UUW statute is the same, *i.e.*, the protection of the police and the public from dangerous weapons.

Next, we must consider whether the aggravated UUW is a more serious offense than UUW and merits a harsher punishment.

Under the aggravated UUW statute the weapon must be loaded, uncased and easily accessible to the defendant, whereas under the UUW statute, possession of an unloaded weapon that is accessible and uncased is sufficient to violate the statute. Unarguably, the potential for harm is greater for the police and the general public when one is confronted with a loaded, uncased and accessible weapon as contemplated under the aggravated UUW statute. We conclude, as our court did in *McGee*, that the conduct to be deterred under the aggravated UUW statute is more serious, thereby justifying a higher sentence. *McGee*, 341 Ill. App. 3d at 1035. For all of the foregoing reasons, we find that the aggravated UUW statute does not violate the proportionate penalties clause of the Illinois Constitution.

Defendant next contends that the aggravated UUW statute is unconstitutional because it potentially punishes wholly innocent conduct in violation of due process.

■ This issue was addressed by this court in *Grant*, 339 Ill. App. 3d at 802-03, where the defendant made the same allegation regarding the aggravated UUW statute. See also *McGee*, 341 Ill. App. 3d 1029; *Marin*, 342 Ill. App. 3d 716. This court first noted that the standard of review when legislation is being challenged as failing to comply with substantive due process requirements, and that legislation does not involve a fundamental right, is whether the statute bears a rational relationship to a legitimate state goal. *Grant*, 339 Ill. App. 3d at 803.

■ As in *Grant*, defendant in the case at bar suggests that similar to the statutes invalidated in *People v. Wick*, 107 Ill. 2d 62 (1985), *People v. Zaremba*, 158 Ill. 2d 36 (1994), and *People v. Wright*, 194 Ill. 2d 1 (2000), sections 24—1.6(a)(1) and (a)(3)(A) of the aggravated UUW statute, as set out above, require a "knowing" mental state without further requiring any culpable mental state and are, therefore, unconstitutional. The *Grant* court found, and we agree, that contrary

to defendant's assertion, the statute in question does, in fact, require a mental state. Section 24—1.6(a)(1) expressly provides that the mental state for aggravated UUW is knowledge. *Grant*, 339 Ill. App. 3d at 805. Also contrary to defendant's assertions, in both the present case and in *Grant*, the purpose of the statute is to allow the State to seek a harsher penalty for any person in the State of Illinois who does not fall under a specific exemption from carrying a loaded weapon on or about his person or in any vehicle because of the inherent dangers to police officers and the general public, even if the person carrying the weapon has no criminal objective. *Grant*, 339 Ill. App. 3d at 806. The *Grant* court found, and we again agree, that the statute in question is reasonably designed to achieve its stated purpose. See *Grant*, 339 Ill. App. 3d at 806-07. Accordingly, we hold that sections 24—1.6(a)(1) and (a)(3)(A) of the aggravated UUW statute are constitutional in that they bear a rational relationship to the public interest served, and the means adopted are reasonably designed to accomplish the desired objective.

Finally, defendant contends that section 24—1.6(a)(1) violates due process and equal protection because it permits property owners to carry weapons anywhere on their own land while restricting renters from carrying weapons in the common areas of their residences.

The guarantee of equal protection does not deny the State the power to draw lines that result in different treatment for different classes of individuals. *People v. Reed*, 148 Ill. 2d 1, 7 (1992). It does, however, prohibit the State from according unequal treatment to persons placed by a statute into classes for reasons wholly unrelated to the purpose of the legislation. *Reed*, 148 Ill. 2d at 7. Two standards of review are applied to review of equal protection arguments. Strict scrutiny is necessary if the statute contains a suspect classification such as one based upon race or if the statute infringes upon a fundamental right. *Reed*, 148 Ill. 2d at 7. If, as in the instant case, the defendant contends that a statute violates his or her substantive due process rights and no fundamental right is implicated, that party must show that the statute is not rationally related to a legitimate government interest. *People v. Lindner*, 127 Ill. 2d 174, 188 (1989).

Under the rational basis test, a court's review of a legislative classification is limited and generally deferential. *People v. Shephard*, 152 Ill. 2d 489, 502 (1992). The legislature, under the State's police power, has wide discretion to classify offenses and prescribe penalties for those offenses. *Shephard*, 152 Ill. 2d at 502. Whether a statute is wise or unwise, and whether it is the best means to achieve the desired results, are among the matters for the legislature and not the courts. *Shephard*, 152 Ill. 2d at 503.

■ In exempting property owners or persons in their fixed place of business, the legislature was mindful of the need of people to defend their homes and businesses from unlawful intruders and the fact that the police cannot protect every home and every business 24 hours a day. The renter also has this right insofar as his apartment is concerned. However, to allow all of the renters of one apartment complex to carry or possess a weapon in the common areas would be to invite the situation that the legislature sought to prevent, *i.e.*, the mass possession of weapons, which would pose a danger to the public and the police alike. In limiting the allowable possession of weapons to property in which one has ownership, the legislature has balanced a person's need to protect his home or business with the need of the general public and the police to be protected from potential use of weapons in situations unrelated to protecting one's property or business. We conclude, therefore, there is a rational basis for denying renters the right to possess weapons in the common areas of apartment buildings and find that the aggravated UUW statute does not violate equal protection.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN, P.J., concurs.

JUSTICE HALL dissenting:

I respectfully dissent from the majority in this case because I am of the opinion that the State failed to prove beyond a reasonable doubt that the defendant was not on his own land at the time of the offense in this case.

The majority concludes that the testimony of the police officers that the buildings were CHA buildings and that their duties as CHA police officers were to patrol federally funded housing sites was sufficient evidence from which the trier of fact could infer that the defendant was not on his own land at the time of the offense in this case.

At the outset, I agree that the State may rely on circumstantial evidence to prove that the defendant was not on his own land at the time of the offense. *People v. Laubscher*, 183 Ill. 2d 330, 335, 701 N.E.2d 489, 491 (1998). However, "there must be *some* evidence giving rise to a reasonable inference of defendant's guilt; the State may not leave to conjecture or assumption essential elements of the crime. [Citation.]" (Emphasis in original.) *Laubscher*, 183 Ill. 2d at 335-36, 701 N.E.2d at 491.

In *Laubscher*, the defendant, who had a gun on his person, had a confrontation with a Mr. Darvin on the lawn area of an apartment complex where they both resided. Subsequently, the defendant, armed with an SKS rifle, pursued Mr. Darvin, who eventually sought refuge in his apartment. The police were called and arrested the defendant.

The supreme court upheld the appellate court's decision reversing the defendant's conviction, stating as follows:

> "In reversing defendant's conviction, the appellate court noted a complete lack of evidence regarding the nature of defendant's interest in the land encompassing the apartment building. The court concluded that, although it was not unreasonable for the trial court to *assume* defendant had no ownership interest in the premises, permitting such an inference without any evidentiary basis would effectively shift the burden to defendant to prove that he was on his land or that he otherwise fell within an exception to section 24—1(a)(4). We agree with the appellate court's reasoning. The sole evidence offered by the State regarding defendant's connection with the property was that he 'lived in the building.' There was no proof of his interest in his unit or the surrounding land, or as to the ownership of the property in general. Although on one occasion, Darvin loosely referred to occupants of the building as 'tenants,' this was insufficient to establish beyond a reasonable doubt defendant's particular interest in the premises." (Emphasis in original.) *Laubscher*, 183 Ill. 2d at 336, 701 N.E.2d at 491-92.

The majority does not address the decision in *People v. Hayes*, 308 Ill. App. 3d 194, 719 N.E.2d 372 (1999). In that case, defendant was found guilty of unlawful use of weapons. The reviewing court, relying on *Laubscher*, concluded that the State had failed to prove that the defendant was not on his own land. The defendant, whose detached garage faced an alley, was arrested in the alley, which was open to the public. Neither party presented any evidence as to whether the defendant owned any part of the alley. The court concluded that, as in *Laubscher*, the State failed to introduce evidence of the defendant's ownership interest in the alley and, as the trier of fact, the jury improperly inferred the negation of the " 'on his land' " exception from the absence of evidence regarding it. *Hayes*, 308 Ill. App. 3d at 197, 719 N.E.2d at 375.

The only evidence of "ownership or ownership interest" in this case was the testimony that the property was a CHA building. From that evidence, the majority concludes that it can be inferred that the CHA owned the property on which the offense in this case was committed. However, in *Hayes*, the court found that the State had failed to introduce evidence of the defendant's ownership interest in the alley, even in light of testimony that the alley was referred to as " 'Tye

Court' " and that several businesses abutted the alley. *Hayes*, 308 Ill. App. 3d at 196, 719 N.E.2d at 374.

In the absence of testimony explaining who or what "CHA" was, merely referring to the property as "CHA" buildings or that they were federally funded does not denote ownership in any way and therefore, is not evidence from which ownership could be inferred.[1]

There is no evidence as to the defendant's ownership interest in the property. The State offered no proof of the defendant's interest in the land. The State merely argued that it was unreasonable to assume that an 18-year-old, such as the defendant, would have had an interest in the property in this case. Instead, the majority finds the inference that CHA owned the property sufficient to exclude the defendant from ownership.

However, as the court in *Laubscher* observed, while it would not be unreasonable for the trier of fact to assume that an 18-year-old defendant did not have an interest in the property, permitting such an inference without any evidentiary basis effectively shifts the burden to the defendant to prove that he was on his own land.

That, in effect, is what has happened in this case. Since it cannot be inferred that the CHA owned or had an ownership interest in the property in this case, there is no evidence from which the extent of the defendant's ownership interest in the property could be inferred. The State offered no evidence that an 18-year-old could not own property or would be otherwise barred from having an interest in property, either public or private. While it might be reasonable to assume that an 18-year-old, such as the defendant, would not have an ownership interest in the property in this case, there has to be *evidence* to support such an inference.

As in both *Laubscher* and *Hayes*, there is a complete lack of evidence regarding the nature of the defendant's interest in the property on which the offense in this case took place. Therefore, "the jury improperly inferred the negation of the 'on his land' exception from the absence of evidence regarding it." *Hayes*, 308 Ill. App. 3d at 197, 719 N.E.2d at 375.

Since the State failed to prove beyond a reasonable doubt that the defendant was not on his own land at the time of the offense in this case, the defendant was not proved guilty beyond a reasonable doubt.

---

[1] Under that logic, our former governor is the owner of the "James R. Thompson Center" building.

The defendant's conviction and sentence should be reversed. The remaining issues raised by the defendant need not be addressed.[2]

Therefore, I respectfully dissent.

---

[2]I note that the State did not argue that the defendant's possession of the gun while he was on Locust Street would have been sufficient to convict him of the offense in this case. See *People v. Kelley*, 338 Ill. App. 3d 273, 788 N.E.2d 775 (2003) (the defendant was guilty of aggravated unlawful use of a weapon where circumstantial evidence proved that, while driving to the location where the shooting ultimately took place, the defendant carried a revolver on or about his person).