# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Williams, 2011 IL App (1st) 091667-B**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OMAR WILLIAMS, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-09-1667 |
| Filed | December 15, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for aggravated unlawful use of a weapon was affirmed over defendant's claim that the statute violated the second amendment, but the cause was remanded for modification of the mittimus to reflect the vacation of the court system fee, the court supervision fee and the serious traffic violation fee, the application of the presentence incarceration credit to the mental health "fee," the youth diversion/peer court "fee," the Children's Advocacy Center "fee," and the drug court "fee," which are actually fines, and the vacation of the DNA analysis fee, because defendant provided a DNA sample pursuant to a prior conviction. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-16364; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

Counsel on          Michael J. Pelletier, Alan D. Goldberg, and Brian A. McNeil, all of State
Appeal              Appellate Defender's Office, of Chicago, for appellant.

                    Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg,
                    William Toffenetti, Mary Needham, and Tasha-Marie Kelly, Assistant
                    State's Attorneys, of counsel), for the People.


Panel               JUSTICE PUCINSKI delivered the opinion of the court, with opinion.[*]
                    Presiding Justice Lavin and Justice Salone concurred in the judgment and
                    opinion.[**]

## OPINION


¶ 1     Defendant Omar Williams was convicted in a bench trial of two counts of unlawful use of a weapon by a felon and six counts of aggravated unlawful use of a weapon (AUUW). At sentencing, all counts were merged into one AUUW conviction and defendant was sentenced to 5 years in prison, with 308 days' credit for the time he served awaiting trial. Defendant was also assessed costs totaling $715. On appeal defendant challenges the constitutionality of the criminal laws of which he was convicted as violative of the second amendment to the United States Constitution. He also challenges some of the fines and fees that the trial court assessed. On December 2, 2010, this court issued an opinion upholding defendant's conviction and sentence but modifying the costs that he was assessed. *People v. Williams*, 405 Ill. App. 3d 958 (2010). Thereafter, on September 28, 2011, the supreme court issued a supervisory order directing this court to vacate our decision and reconsider defendant's claims in light of its recent decision in *People v. Marshall*, 242 Ill. 2d 285 (2011). *People v. Williams*, No. 111594 (Ill. Sept. 28, 2011). On reconsideration, we again affirm defendant's conviction and sentence and modify the fees and costs that he was ordered to pay.

---

[*]Following Justice O'Mara Frossard's retirement, Justice Pucinski delivered the judgment of the court, with opinion. Justice Pucinski has reviewed all relevant materials, including the court's original opinion filed on December 2, 2010, and the supervisory order issued by our supreme court on September 28, 2011.

[**]Pursuant to Justice O'Brien's retirement, Justice Salone has participated in the reconsideration of this case. Justice Salone has reviewed all relevant materials, including the original opinion filed on December 2, 2010, and the supervisory order issued by our supreme court on September 28, 2011.

## I. BACKGROUND

Defendant does not challenge the sufficiency of the evidence underlying his convictions; rather, he challenges the constitutionality of statutes under which he was convicted. Accordingly, we only include a brief recitation of the relevant facts.

The State's evidence at trial established that on August 14, 2008, at about 5 p.m. the victim, Robert Brown, was walking and conversing with a friend in the area of 1324 West 13th Street in Chicago. Defendant, whom Brown had known for about 10 years, ran up behind Brown and struck him in the face with a silver-gray 9-millimeter handgun. Defendant then took $30 from Brown's pants pocket. Brown walked to his grandmother's house, where he cleaned himself off, and then rode his bike to the hospital. Brown subsequently identified defendant as his assailant in a lineup and also identified him at trial. Defendant was arrested on the street later that same day. Police found a chrome 9-millimeter semiautomatic handgun loaded with nine bullets on defendant's person. They also recovered money from defendant, including one $100 bill, one $10 bill, and two $1 bills. The prosecution introduced evidence that defendant had previously been convicted of unlawful use of a weapon by a felon. Because the money found on defendant did not match the $30 he allegedly took at gunpoint from Brown and no part of the bills that police recovered could add up to $30, the trial judge acquitted defendant of the offense of robbery, with which he was also charged. The trial court, however, did convict defendant of six counts of aggravated unlawful use of a weapon and two counts of unlawful use of a weapon by a felon. The trial court subsequently merged the charges into one count of aggravated unlawful use of a weapon conviction, sentenced defendant to five years in prison, and assessed a number of costs. Defendant's timely appeal followed.

## II. ANALYSIS

On appeal, defendant challenges the constitutionality of the aggravated unlawful use of a weapons statute and the unlawful use of a weapon by a felon statute, arguing that these provisions violate his constitutional right to bear arms.

The second amendment to the United States Constitution provides:

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

We need not discuss defendant's contention that the second amendment is incorporated in the due process clause of the fourteenth amendment and therefore applies to individual states, including Illinois. This proposition was answered affirmatively in *McDonald v. City of Chicago*, 561 U.S. ___, ___, 130 S. Ct. 3020, 3044 (2010). Nor need we reexamine the case of *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483 (1984), as defendant suggests we should in light of *McDonald*. *Kalodimos* held that a village ordinance prohibiting, with a few exceptions, the possession of operable handguns was a correct exercise of police power and was not in violation of the Illinois constitutional provision which provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. Any reexamination of *Kalodimos* would be the task of the Illinois Supreme Court. Moreover, in light of the application of the second amendment

to the states by *McDonald*, there is no need to resort to constructions of the Illinois Constitution's provision applicable to the right to bear arms. Nor does defendant attempt to explain how such an application would be helpful to his arguments, given the extraordinary deference to the police power which this provision grants. *Kalodimos*, 103 Ill. 2d at 491-92.

¶ 8 Defendant's central contention is that the recent cases of *District of Columbia v. Heller*, 554 U.S. 570, 635-36 (2008), and *McDonald*, which applied the second amendment to invalidate laws virtually banning any possession of loaded handguns for self-defense in the home, should be extended to invalidate the statutes of which defendant was convicted, which criminalize defendant's possession of a loaded handgun outside of his home. This court has recently explored this very issue and definitively determined that the United States Supreme Court's holdings in *Heller* and *McDonald* do not establish that the Illinois statute on aggravated unlawful use of a weapon is unconstitutional. *People v. Dawson*, 403 Ill. App. 3d 499, 506, 934 N.E.2d 598, 607 (2010). We find *Dawson* to be persuasive, and accordingly, we reject defendant's challenges to the AUUW statute as well as the statute criminalizing the unlawful use of a weapon by a felon, the two statutes of which he was convicted in eight different permutations.

¶ 9 This challenge to the constitutionality of a statute is subject to *de novo* review. *Davis v. Brown*, 221 Ill. 2d 435, 443 (2006). Moreover, as we stated in *Dawson*:

"We begin review of such an argument with the presumption that the statute is constitutional. *** It is our duty, when it may be reasonably done, to construe a challenged statute in a manner that upholds its validity and constitutionality. [Citation.]" *Dawson*, 403 Ill. App. 3d at 506.

¶ 10 Upon close review of the arguments presented by defendant, it becomes clear that he overstates the holdings of *Heller* and *McDonald* in order to make them appear to control the outcome of the present challenge. For example, defendant notes that *Heller* found that a handgun, the type of firearm at issue there and in the case before us, was one contemplated for protection by the drafters of the second amendment, because it was commonly in use at the time and not particularly dangerous or unusual as a firearm. But it is clear that *Heller* found this a necessary but not sufficient quality of those weapons that were protected. *Heller* also noted that a crucial factor in permitting the criminalization of such weapons might not be just their type but their location, such as possessing them in schools and government buildings. *Heller*, 554 U.S. at 626-27. Thus, pursuant to the holding in *Heller*, a handgun that would be legal to possess in one's home could be illegal to possess in a school or library.

¶ 11 Defendant attempts to turn this reasoning on its head by concluding that *Heller*'s citation of "sensitive" places where firearms could be banned outside the home necessarily meant that they could not be banned everywhere outside the home. There are two responses to this argument. One response is that the Illinois statute does permit firearms to be possessed outside the home under certain circumstances if they are not "uncased, loaded and immediately accessible." 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008). More importantly, the second response is that the rulings in both *Heller* and *McDonald* made clear that the only type of firearms possession they were declaring to be protected under the second amendment was the right to possess handguns in the home for self-defense purposes. *Heller*, 554 U.S.

at 622-26; *McDonald,* 561 U.S. at ___, 130 S. Ct. at 3050 (extending this protection, under the due process clause, to infringement by state statutes). It is this narrow focus which defeats a final argument made by defendant, that *Heller* defined the right to "bear arms" as the right to carry a weapon on one's person or clothing in order to be armed and ready for offensive or defensive action. *Heller*, 554 U.S. at 584-86. But again, this was in the context of the right to bear arms for protection in one's home, and the holdings do not extend beyond such usage.

¶ 12    Along with the narrow holdings of *Heller* and *McDonald*, we must acknowledge the numerous Illinois cases predating those two decisions which have found the Illinois statute on unlawful use of weapons to be constitutional and a rational expression of public policy in the face of due process challenges. *People v. Sole*, 357 Ill. App. 3d 988, 991 (2005); *People v. Austin*, 349 Ill. App. 3d 766, 772 (2004); *People v. Pulley*, 345 Ill. App. 3d 916, 925 (2004); *People v. Marin*, 342 Ill. App. 3d 716, 729 (2003); *People v. Grant*, 339 Ill. App. 3d 792, 802-03 (2003). As we held in *Austin*:

> "[T]he [AUUW] statute reflects a rational relationship to its intended purpose to impose greater punishment for conduct that creates 'inherent danger to police officers and the general public, even if the person carrying the weapon has no criminal objective.' " *Austin*, 349 Ill. App. 3d at 772 (quoting *Pulley*, 345 Ill. App. 3d at 925, citing *Grant*, 339 Ill. App. 3d at 806).

¶ 13    These courts applied a rational basis test in determining the constitutionality of the AUUW statute because they found that no fundamental right was at issue. Like the court in *Dawson*, we found that no fundamental right is implicated here, even in light of the holdings of *Heller* and *McDonald*. As we stated in *Dawson*:

> "[I]t is essential to the resolution of this issue to understand that the *Heller* Court ultimately limited its holding to the question presented–that the second amendment right to bear arms protected the right to possess a commonly used firearm, a handgun, in the home for self-defense purposes. *Heller*, 554 U.S. at 598-99, 624-25, 171 L. Ed. 2d at 661-62, 677, 128 S. Ct. at 2801-02, 2815-16. *McDonald* also addressed the limited question of whether a ban on the possession of a handgun in the home violated the second amendment right to bear arms. The holding in *McDonald* was similarly constrained with a plurality of the Court concluding that the right to possess a handgun in the home for self-defense was fundamental and incorporated under the due process clause. *McDonald*, 561 U.S. at ___, 177 L. Ed. 2d at 929, 130 S. Ct. at 3040." *Dawson*, 403 Ill. App. 3d at 508.

For this reason, the *Heller* court expressly determined not to apply any particular level of constitutional scrutiny, declaring that although rational basis scrutiny would be too low (*Heller*, 554 U.S. at 628 n.27) under any of the traditional heightened levels of scrutiny, banning the possession of handguns in the home for self-protection would be unconstitutional (*Heller*, 554 U.S. at 626-29).

¶ 14    But the AUUW statute does not implicate the fundamental right announced by *Heller* and extended to the states under the due process clause by *McDonald*, the right to possess a loaded handgun in the home for self-protection. For this reason, we adhere to the cases we have cited, such as *Austin* and *Pulley*, which found that there was a rational basis to the

AUUW statute's ban on carrying and possessing loaded firearms outside of the home, that is, the protection of police officers and the general public. Accordingly, we agree with and adopt the holding of *Dawson*, 403 Ill. App. 3d at 510, that this Illinois statute limiting the right of citizens to carry, outside of their homes and on their persons or in their vehicles, loaded and accessible firearms does not violate the second amendment.

¶ 15    Defendant was 19 years old when he was arrested for possession of a loaded handgun. He presents an alternative argument, necessarily premised on a finding by us that under the second amendment adults have a constitutional right to possess loaded handguns outside of their homes. Defendant contends that his youth should not prevent the application of such a holding to him and therefore the statute under which he was convicted is unconstitutional because it specifically prohibits the possession of handguns outside the home by anyone under the age of 21. 720 ILCS 5/24-1.6(a)(3)(I) (West 2008). Defendant presents a number of arguments for why those between the ages of 18 and 20 should be treated similarly to adults. But we have determined that the State may constitutionally ban the possession of loaded handguns by adults outside their homes. Defendant has failed to present any reason supporting a different result for those under the age of 21 and therefore his challenge must fail.

¶ 16    Defendant asserts that the holdings of *Heller* and *McDonald* also render unconstitutional the statute under which he was convicted for unlawful use of a weapon and possession of ammunition by a felon. 720 ILCS 5/24-1.1(a) (West 2008). But the courts in *Heller* and *McDonald* made clear that no such result was intended:

"[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill ***." *Heller*, 554 U.S. at 626.

*McDonald* was even stronger in its defense of these traditional prohibitions:

"We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill' ***. We repeat those assurances here. Despite municipal respondents' doomsday proclamations, incorporation does not imperil every law regulating firearms." *McDonald*, 561 U.S. at ___, 130 S. Ct. at 3047.

Even if this language is construed as *dictum*, subsequent courts have determined that under an intermediate level of scrutiny, laws prohibiting the possession of firearms by felons or by repeat sexual offenders would withstand constitutional scrutiny. *United States v. Williams*, 616 F.3d 685, 694 (7th Cir. 2010) (where defendant had been convicted of a violent felony, no merit to his claim that a statute banning possession of firearms by convicted felons infringed upon his constitutional right to possess a firearm); *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010) (statute banning possession of firearms by persons convicted of at least two misdemeanor crimes of domestic violence was constitutional). We agree that under any appropriate level of scrutiny, the second amendment was not intended to permit a convicted felon to possess, on his person, a loaded handgun. We also note that defendant was found to be in possession of this handgun and ammunition while standing on a public street, thus negating any possible application of the holding of *Heller* and *McDonald* concerning possession of handguns in the home. Because the statute applies to the situation

in which defendant found himself, being in a public place with a handgun, he cannot argue for relief based on the possibility that the statute might be unconstitutional as applied to a felon in possession of a handgun in his own home. *United States v. Salerno*, 481 U.S. 739, 745 (1987).

¶ 17   On the question of costs, the defendant contends, and the State correctly concedes, that it was improper to assess the defendant a $5 court system fee (55 ILCS 5/5-1101(a) (West 2008)), a $25 court supervision fee (625 ILCS 5/16-104c (West 2008)) and a $20 serious traffic violation fee (625 ILCS 5/16-104d (West 2008)) because all of these fees can only be imposed upon conviction or placement on supervision for either a violation of the Illinois Vehicle Code (625 ILCS 5/11- 501 (West 2008)), a municipal ordinance or a serious traffic violation. Defendant was not convicted of any of these offenses and therefore these fees must be vacated.

¶ 18   Defendant also challenges the assessment of a court services fee of $25, contending that the statute limits the assessment to those convicted of specific designated statutes, which do not include the statutes under which he was convicted. Defendant misreads the court services fee statute, which provides in pertinent part:

> "In criminal, local ordinance, county ordinance, traffic and conservation cases, [the court services fee] shall be assessed against the defendant upon a plea of guilty, stipulation of facts or findings of guilty, resulting in a judgment of conviction, or order of supervision, or sentence of probation without entry of judgment pursuant to [certain enumerated criminal statutes]." 55 ILCS 5/5-1103 (West 2008).

It is clear that the statute permits assessment of this fee upon any judgment of conviction but also permits such assessment for orders of supervision or probation, made without entry of a judgment of conviction, for certain limited and enumerated criminal provisions. Judgments of conviction were entered for defendant, and the fact that these convictions were not among those enumerated by the statute for imposition of this fee without entry of conviction does not void the assessment.

¶ 19   We must next consider whether certain designated "fees" assessed against the defendant were in fact "fines" for which he is entitled to presentence incarceration credit of $5 a day. 725 ILCS 5/110 -14(a) (West 2008). As was stated in *People v. Jones*, 223 Ill. 2d 569, 582 (2006):

> "Broadly speaking, a 'fine' is a part of the punishment for the conviction, whereas a 'fee' or 'cost' seeks to recoup expenses incurred by the state–to 'compensat[e]' the state for some expenditure incurred in prosecuting the defendant."

Thus, despite the statutory label, a "fee" that is not intended to specifically reimburse the State for costs it has incurred in prosecuting a defendant is actually a "fine." *Jones*, 223 Ill. 2d at 581. Here, defendant was assessed a $10 mental health "fee" to be placed in a general fund to finance the mental health court (55 ILCS 5/5-1101(d-5) (West 2008)); a $5 youth diversion/peer court "fee" to help fund the court of that name (55 ILCS 5/5-101(e) (West 2008)); a $30 Children's Advocacy Center "fee" to help fund that body (55 ILCS 5/5-101(f-5) (West 2008)); and a $5 drug court "fee" to help fund that court (55 ILCS 5/5-1101(f) (West 2008)). None of these charges were designed to reimburse the State for money it

expended in prosecuting this defendant; accordingly, they are all "fines" for which presentence incarceration credit of $5 per day is authorized. These charges total $50 and defendant is entitled to that amount in credit from his presentence incarceration credit.

¶ 20    Defendant next claims that he is entitled to a similar credit for the $200 mandatory fee for DNA collection and testing that was imposed upon him pursuant to section 5-4-3 of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-4-3 (West 2008)). Defendant argues that the State had previously obtained a DNA sample from him pursuant to a prior conviction and that he may not be assessed the $200 DNA collection again. Although we upheld the imposition of this fee in our original disposition, we find that a different result is warranted on rehearing in light of our supreme court's recent analysis in *People v. Marshall*, 242 Ill. 2d 285 (2011).

¶ 21    Section 5-4-3 of the Unified Code, in pertinent part, provides:

"Any person *** convicted or found guilty of any offense classified as a felony under Illinois law, *** shall, regardless of the sentence or disposition imposed, be required to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police in accordance with the provisions of this Section, provided such person is:

* * *

(3.5) convicted or found guilty of any offense classified as a felony under Illinois law *** on or after August 22, 2002." 730 ILCS 5/5-4-3(a)(3.5) (West 2008).

The provision further provides that: "Any person required by subsection (a) to submit specimens of blood, saliva, or tissue to the Illinois Department of State Police for analysis and categorization into genetic marker grouping, in addition to any other disposition, penalty, or fine imposed, shall pay an analysis fee of $200." 730 ILCS 5/5-4-3(j) (West 2008). When our supreme court recently examined this provision in *People v. Marshall*, 242 Ill. 2d 285 (2011), it concluded that section 5-4-3 of the Unified Code "authorizes a trial court to order the taking, analysis and indexing of a qualifying offender's DNA, and the payment of the analysis fee *only where that defendant is not currently registered in the DNA database*." (Emphasis added.) *Marshall*, 242 Ill. 2d at 303. Accordingly, a defendant who is convicted of a felony and provides a DNA sample and pays the fee need not resubmit a sample and pay an additional fee for every subsequent felony conviction. *Marshall*, 242 Ill. 2d at 297, 303.

¶ 22    Here, the record reveals that defendant had previously been convicted of felonies before he was convicted of the offenses in the case at bar. Namely, defendant's criminal history includes a 2007 conviction for reckless discharge of a firearm under case number 07 CR 0502701 and a 2007 unlawful use of a weapon by a felon conviction under case number 07 CR 1939501. Although the record does not indicate whether or not the DNA assessment fee was imposed in those cases, we note that this statutory provision was added to the Unified Code by amendment in 1997 (Pub. Act 90-130, § 30 (eff. Jan. 1, 1998) (amending 730 ILCS 5/5-4-3 (West 1996)), and thus the DNA assessment requirement was in effect when defendant was convicted of his prior felonies in 2007. Because section 5-4-3 of the Unified Code mandates that a convicted felon submit a DNA sample and pay the analysis fee, we presume the circuit court followed the law and assessed the fee on defendant as part of either of the sentences imposed on his prior felony convictions. See *People v. Gaultney*, 174 Ill. 2d

410, 420 (1996) (trial court is presumed to know and follow the law unless the record indicates otherwise). Therefore, we vacate the imposition of the $200 DNA analysis fee.

## III. CONCLUSION

For the reasons set forth in this opinion, we affirm defendant's conviction and sentence but remand for modification of the mittimus to accord with our findings regarding the imposition of certain costs and the application of pretrial incarceration credit.

Affirmed in part and vacated in part; cause remanded with directions.