STATE v. JAMES PERRY.

*Indictment for Carrying Concealed Weapon—Statute, Construction of—Premises of Defendant.*

1. The use of the words, "on his own premises," and not being "on his own lands," in Section 1005 of *The Code*, shows an intention to restrict the right to carry concealed weapons to those who are in the privacy of their own premises and not likely to be thrown into contact with the public, nor tempted, on a sudden quarrel, to use the great advantage a concealed weapon gives.

2. The exception in the Statute (Section 1005 of *The Code*) does not apply to the officials of corporations, such as turnpikes, railroads and others, which invite the public to use their lines of travel.

3. The superintendent of a turnpike company owning a turnpike nine miles long and open to public travel, when on such turnpike, is not within the exception to Section 1005 of *The Code*, although he has absolute control of all the property of the company.

    FAIRCLOTH, C. J., and DOUGLAS, J., dissenting.

This was a criminal action, tried before *Meares, J.,* at the January Term, 1897, of the Circuit Criminal Court in NEW HANOVER county.

The defendant was indicted under *The Code* for carrying a concealed weapon, he not being an officer of the law, in the military or marine service of the United States or of the State of North Carolina. The following facts were found as a special verdict:

" The defendant was the general manager and supervisor of the Wilmington Seacoast Turnpike Company, and had absolute control of all the property of said company and resided upon the property of said turnpike company, upon which he was found in possession of the weapon concealed about his person; he being at that time upon the premises and the property of the said company.

"The turnpike road leads from the city of Wilmington to Wrightsville Sound, a distance of nine miles, and is the

only property that the said company owns in New Hanover county."

The above facts were submitted to the court, and upon them the court found that the defendant was guilty as charged in the bill of indictment, and was fined the sum of $20 and the cost of the action, from which judgment the said defendant appealed.

*Mr. Attorney General Zeb V. Walser*, tor the State.
*Mr. Herbert McClammy*, for defendant (appellant).

CLARK, J.: *The Code*, Section 1005, makes it a misdemeanor for any one to carry a concealed weapon, except when on "his own premises,"and provides that if any one "not being on his own lands" shall have about his person a deadly weapon of the kind enumerated in the Statute, such possession is *prima facie* evidence of concealment.     Certain classes of persons, as soldiers, certain officers on official duty. &., are exempted from the operation of the Statute.     The use of the words "on his own premises" and "not being on his own lands," shows an intention to restrict the right to carry concealed weapons to those who are in the privacy of their own premises where they are not likely to be thrown in contact with the public nor tempted on a sudden quarrel to use, to the detriment of others, the great advantage a concealed weapon gives to one who unexpectedly pulls it out upon his defenceless neighbor.     In construing a criminal Statute the evil to be remedied must be considered.

*State* v. *Terry*, 93 N. C., 585, holds that "on his own premises" does not require that the person shall have legal title to the land, but that any one in possession as a tenant, or even as an overseer or agent, would have the same right as the owner.     This is because he is in possesion as the re-

preventative of the owner and with his rights. But it was never intended by that decision to extend the constructive possession to the superintendent of a public turnpike nine miles long. Even were the turnpike the property of the defendant, still as he has thrown it open to the public and invited their use of it, it is not "his own premises" in the sense of the Statute, which hangs not upon the legal title (*State* v. *Terry*, *supra*), but upon the right of the person to treat it as "in his possession" and who, therefore, is privileged to keep other persons off and to carry concealed weapons thereon. He can carry weapons openly thereon like any one else who desires to do so. The Statute never intended that railroad and turnpike superintendents and presidents and vice-presidents and others having supervision of like property should be placed on a different footing from other citizens (not officers on duty, &c.). The Statute clearly does not contemplate that in the crowded cars and thoroughfares the corporation officials shall have leave to carry concealed weapons about their persons while all other citizens traveling thereon dare not do the same under fear of criminal punishment. "On their own premises" and "on their own lands" do not apply to officials of such corporations as invite the public to use their lines of travel. The stockholders themselves are not authorized to carry concealed weapons when on the cars or right of way of a railroad or turnpike, and, certainly their overseer or superintendent can have no greater right in this respect. Neither stockholders nor their overseers or agents have any more right to carry concealed weapons thereon than any one else, and there is no reason they should. The reasoning in *State* v. *Terry*, *supra*, rested not upon the person being an overseer or superintendent, but upon his being in possession in lieu of the owner, and hence it was held that Terry, a mere farm laborer, having no possession, was guilty in

carrying the concealed weapon on his employer's farm. The illegality of carrying concealed weapons is the rule, and the exception as to officers on duty is for manifest reasons, and the exception as to a person "on his own premises" is for reasons above given. If the defendant had merely been occupying a part of the turnpike company's land for his residence, as to such lot and its curtilage he was a tenant, and as to them he was "on his own premises" and privileged to carry a concealed weapon thereon. But the defendant's counsel argued the case on the ground that the special verdict intended to raise the question of the defendant's right to carry a concealed weapon anywhere upon the turnpike property, nine miles in length, upon the ground that he is superintendent of the property and has a residence upon a small part thereof, and we so understand it. As to that part of the property beyond what he occupies as a residential lot, the defendant is not "on his own premises" within the purport of the Statute, and has no more privilege to carry a concealed weapon than the public, who have as much right thereon, as a public highway, as himself. A road overseer has no more right to carry concealed weapons than the hands who work under him, yet while working the road he is superintendent of it in the same sense that the defendant is superintendent of the turnpike.

No Error.


FAIRCLOTH, C. J., dissenting: The turnpike company's right of way leads from Wilmington to Wrightsville Sound, a distance of nine miles, and the company had no other property in the county. The defendant was the general manager and supervisor of the turnpike company and had absolute control of all the property of said company, and resided upon the property of said turnpike company, upon

which he was found in possession of the weapon concealed about his person, he being at that time upon the premises and the property of the said company.

I cannot agree with the majority of the court. I will state my reasons. I think the case should be remanded to find the specific facts, *i. e.*, whether the defendant resides on the turnpike and whether he was on it or at his immediate residence when the pistol was found on his person. I do not think criminal Statutes should be strictly construed against the citizen. In *State* v. *Terry*, 93 N. C., 585, the defendant was a hireling on prosecutor's land where he had the concealed weapon, slept and lived in his father's house on another's land. He was held to be guilty. The court said in that case, "What is meant *by his own premises* and *his own land*, is not that he must have a legal title to the land, for we think one who is in the occupation of land, or a tenant at will or at sufferance, would, in the meaning of the Statute, be the owner thereof. So would an agent or overseer, or any one who is vested with the right of *dominion or superintendence over it.*"

A road overseer is only authorized and required to keep his road in good repair, but the defendant is authorized, and it is his duty, to superintend, keep in repair and prevent trespasses on the turnpike. The defendant "had absolute control of all the property of said company." It appears to me that he had the right "of dominion or superintendence over it," as the court declared in *State* v. *Terry*, *supra*, as against the public. Railroad presidents and superintendents do not have "absolute control of all the property of (their) company." They are limited by the rules and regulations of the company to their own departments as general agents. I think a new trial should be ordered.

DOUGLAS, J., dissenting. I feel compelled to dissent from the opinion of the court, both as to its reasoning and its conclusion, and on two separate and distinct grounds.

Section 1005 of *The Code*, under which this defendant is indicted, makes it a misdemeanor for any one to carry a deadly weapon concealed about his person, "except when on his own premises," and further provides that "not being on his own lands," such possession shall be *prima facie* evidence of concealment. However necessary and salutary this Statute may be, and that such it is cannot be denied, it is, nevertheless, a *penal* Statute and should be strictly construed in favor of the defendant. The special verdict finds as follows: "The turnpike company's right of way leads from Wilmington to Wrightsville Sound, a distance of nine miles, and the company had no other property in the county. The defendant was the general manager and supervisor of the turnpike company and had absolute control of all the property of the company, and resided upon the property of the turnpike company, upon which he was found in possession of the weapon concealed about his person, he being at that time upon the premises and the property of said company." This finding might very well be construed to mean that when found with the concealed weapon he was upon the "premises" he occupied as a residence. If so, he would clearly not be guilty, and it would, therefore, be our duty either to give to the defendant the benefit of the doubt, or at least to remand the case so that it may be specifically found whether or not he was on the immediate premises occupied by him as a dwelling. In no event can we adjudge him guilty upon a doubtful state of facts, under one construction of which he would be clearly innocent.

By taking the finding in its strongest sense against the defendant, I am still inclined to the opinion that he is not

guilty.  He was certainly somewhere on the company's property, of all of which he "had absolute control." In *State* v. *Terry*, 93 N. C., 585, this court has said: "What is meant by 'his own premises' and 'his own land,' is not that he must have a legal title to the land, for, we think, one who is in the occupation of land as a tenant at will or at sufferance would, in the meaning of the Statute, be the owner thereof.  So would an *agent* or overseer, or any one who is vested with the right of *dominion* or *superintendence* over it."  Can there be any greater right of dominion or superintendence than that of "absolute control?"  This is not a public road, free to the public at large.  It is the property of the turnpike company, and can be used by the public only upon the payment of toll.  It is thrown open to the public only as a toll bridge or stage coach or a public inn.  That portion of the public only is invited who are willing to pay for the invitation.  All others would be liable to ejectment.  It is evidently the duty of the defendant, not simply to keep the road in repair, but also to collect tolls from those who use it and keep off those who will not pay.  He is in no sense on a level with a mere overseer of the public road, who considers his obligations as fully met by periodically throwing a few shovels of dirt into the more prominent mud holes, and who certainly cannot be said to be in possession.  The stockholders of a railroad company have no right to carry concealed weapons on the cars or the track, because they do not directly own either, and have no possession or control by virtue of their shares. Their ownership extends directly only to their shares of stock.  The property itself is owned by the company, a distinct person, artificial it is true, but none the less real in law.  Being an artificial person, it can hold actual possession of its property only through an officer or agent.  Under the authority of *State* v. *Terry, supra*, I think that

such an agent should, for the purpose of this Statute, be regarded as the owner.   I do not think that railroad super-intendents and directors have a right to carry concealed weapons at will over the entire right of way of the com-pany, but I *do* think that a conductor or express messen-ger, in charge of a train or a particular car, has the right to carry weapons in the manner most convenient for the protection of the lives and property directly committed to his care.   In *Britton* v. *Railroad*, 88 N. C., on p. 544, this court has held that "the carrier owes to the passenger the duty of protecting him from the *violence* and *assaults* of his *fellow passengers or intruders*, and will be held respon-sible for his own or his servants neglect in this particular, when by the exercise of proper care the acts of violence might have been foreseen and prevented, and while not required to furnish a police force sufficient to overcome all force when unexpectedly and suddenly offered, it is his duty to provide ready help sufficient to protect the passen-ger against assaults from every quarter which might rea-sonably be expected to occur under the circumstances of the case and the condition of the parties" —citing *Railroad Co.* v. *Burke*, 53 Miss., 200; *Railroad Co.* v *Hinds*, 53 Pa. St., 512; *Railroad Co.* v. *Pillow*, 76 Pa. St., 510; *Flint* v. *Transportation Co.*, 34 Conn., 554; Thompson on Carriers, 303.

If a railroad company or any other carrier is held to such a high degree of care, it should have all the powers neces-sary and proper to fulfill this obligation.   As the maxim *respondeat superior* is rigidly applied, the agent must have the powers and authority of the owner in the protection of its property and the performance of its duties   The same rule would apply to express messengers, but under this rule the messenger would not be allowed to carry his concealed weapon outside of his car, or the conductor beyond·the

limits of his train or the platform immediately adjacent thereto.   Mail agents are, apparently, protected by the very terms of the Act, being "civil officers of the United States in the discharge of their official duties."   For these reasons I think that a verdict of not guilty should be ordered.