**Reginald E. FORTUNE, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 88–157.

District of Columbia Court of Appeals.

Submitted Dec. 5, 1989.
Decided Feb. 28, 1990.

Joyce Berman, appointed by this court, for appellant.

Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty., at the time the brief was filed, John R. Fisher and Ronald C. Crump, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and KERN, Senior Judge.

STEADMAN, Associate Judge:

Appellant was convicted after a bench trial of carrying a dangerous weapon in violation of D.C.Code § 22–3204 (1989). On appeal, he contends that the trial court erred in ruling that appellant did not fall within the exceptions in section 3204 for a person carrying weapons "in his dwelling house" or "on other land possessed by him." [1] We affirm.

---

1. D.C.Code § 22–3204 (1989) provides, in pertinent part:

No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house

## I

At trial, the court found that on October 4, 1987, Metropolitan Police Officer Mitchell pulled over a car in front of a house at 934 Quincy Street, N.W., and arrested the driver, who was apparently under the influence of alcohol. The driver then broke away and ran into a door at the back of the house. Officer Mitchell called for assistance and waited in the alley. A chain link fence separated the alley and the backyard of the house.

In response to the commotion, appellant, who had been inside the house, went into the backyard. He took his nunchaku sticks[2] with him. Officer Mitchell ordered appellant to freeze and to drop the sticks. After appellant threw the sticks across the fence into the alley, he was arrested.

During the trial, appellant introduced evidence about his living arrangements.[3] His aunt, Frances Johnson, owned the house at 934 Quincy. Appellant stated that he had been living at her house for "[a]pproximately three months."[4] He was doing so in order to save up money for an apartment. He had his own room on the second floor, received his mail there, and had the use of the whole house. His wife and baby, who were staying at his father's house, would come over to spend the weekend with him on occasions. Appellant and his aunt had no formal rental agreement. She did not ask or charge him for rent, but he occasionally gave her money at irregular intervals as he could. On the night of his arrest, appellant reported 934 Quincy Street as his address. He also gave that address to the Pretrial Services Agency.

The trial court concluded on the foregoing facts that appellant did not have any type of possessory interest in the house or even a certain portion or room of that house. Accordingly, the court ruled that appellant did not fall within the exceptions of section 3204 which allow a person to carry a weapon "in his dwelling house" or on "land possessed by him."

## II

As we have noted on past occasions, in enacting section 22–3204 of the Code, Congress intended to drastically tighten the ban on carrying dangerous weapons within the District of Columbia. Correspondingly, judicial recognition of exceptions to the statute has been extremely limited. *See Logan v. United States*, 402 A.2d 822, 825 (D.C.1979), and cases cited therein. We take the same approach in construing the statutory exceptions at issue here.

There is no appellate case law in the District which directly addresses the question of who, within a residential household, is entitled to claim the "dwelling house" exception. Appellant argues that he falls within this exception, since it includes not only a person's physical residence but the area in immediate proximity to that residence, the so-called curtilage. *See Horton v. United States*, 541 A.2d 604, 608 (D.C. 1988). We reject this argument. As the plain language of the statute itself states, that exception only protects a person who carries a weapon *"in* his dwelling house" (emphasis added). This literal reading of the provision is reinforced by an examination of the legislative history. The earlier version contained exceptions permitting a person to carry a dangerous weapon *"about* his place of business, dwelling house, or *premises."* Act of March 3, 1901, ch. 854, § 855, 31 Stat. 1189, 1328

---

or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed.

**2.** Nunchaku sticks, also known as nunchuka sticks, are of Asian origin. They are used by martial arts experts at sports events in individual demonstrations of dexterity and fitness, but are not used in combative sports because of their capacity to cause great injury or death.

*See In re S.P.*, 465 A.2d 823, 824 n. 1, 825 (D.C.1983).

**3.** Both appellant and his aunt testified. The following facts are largely as set forth in the trial court's memorandum opinion of March 16, 1988. *United States v. Fortune*, 116 Daily Wash. L.Rptr. 817 (April 22, 1988).

**4.** Ms. Johnson testified that appellant had been living at her home "about six or eight weeks" at the time of the incident.

(later codified at D.C.Code § 6–114 (1929)) (emphasis added). A 1932 amendment modified this language to permit such activity only *"in* his dwelling house or place of business or *on other land possessed by him."* Act of July 8, 1932, ch. 465, § 4, 47 Stat. 650, 651 (currently codified at D.C. Code § 22–3204) (emphasis added). Here, appellant was outside, in the backyard of the house at 934 Quincy Street. Because appellant was carrying a weapon at a time when he was not *in* his dwelling house, that exception does not apply.

■ Therefore, if appellant is to prevail, he must show that he falls within the exception for a person who carries a weapon "on other land possessed by him."[5] The burden is on appellant to produce some evidence to bring himself within the exception. *White v. United States,* 283 A.2d 21, 23 (D.C.1971); *Williams v. United States,* 237 A.2d 539, 541 (D.C.1968). Under the statute, this exception applies only to a defendant who has a possessory interest in the land on which he or she is arrested. When dealing with real property, such an interest entails more than the right to be physically present on the property; it encompasses also a right to exclude, both in its general sense[6] and as it has been construed within the meaning of section 3204.[7] *See Hines v. United States,* 326 A.2d 247, 249 (D.C.1974) (appellant did not have " *'exclusive* control and possession'" of common area of apartment building) (citation omitted); *White, supra,* 283 A.2d at 24 (appellant did not have *"exclusive* control and possession" of a hallway on the floor above his apartment in an apartment building); *cf. Gaulmon v. United States,* 465 A.2d 847, 853 (D.C.1983) (appellant did not

have exclusive possessory interest in his room in a transient hotel). Whatever rights appellant may have had within his own room or even other portions of the dwelling itself, he made no showing whatever that he had any possessory interest in the land upon which he was carrying the nunchaku sticks.

*Affirmed.*

exclusive legal possession," and a roomer, who "has merely a right to the use of the premises") (footnotes omitted).

---

5. Appellant makes no claim that he falls within any implied exception to the statute because he acted in self-defense or in defense of property.

6. *See* RESTATEMENT OF PROPERTY § 7 (1936):

A possessory interest in land exists in a person who has . . . a physical relation to the land of a kind which gives a certain degree of physical control over the land, and an intent so to exercise such control as to exclude other members of society in general from any present occupation of the land. . . .

*Cf. Beall v. Everson,* 34 A.2d 41, 41–42 (D.C. 1943) (explaining *distinction* between a tenant, who is "a purchaser of an estate, entitled to

7. This is not to say that the possessory interest can be created only by a formal instrument transferring an interest in land. One who does not have such an express interest in real property may nevertheless be able to demonstrate that, under a relationship with the party who does have such an interest, he or she has the power to exclude associated with a possessory interest. No such showing was made here.