(No. 83518.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTHONY LAUBSCHER, Appellee.

*Opinion filed September 24, 1998.*

James E. Ryan, Attorney General, of Springfield, and John C. Piland, State's Attorney, of Urbana (Barbara A. Preiner, Solicitor General, William L. Browers, Catherine F. Glenn and Stephen F. Potts, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Robert J. Biderman and Thomas R. Dodegge, of the Office of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

Andrea Georgelos and Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for appellee.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Anthony Laubscher, was found guilty by the circuit court of Champaign County of unlawful use of a weapon and aggravated assault following a dispute on the premises of his residence. Defendant appealed from his conviction for unlawful use of a weapon, and the ap-

pellate court reversed, concluding that the State failed to prove that at the time defendant possessed the weapon, he was not either "on his land" or in his "fixed place of business" as provided in the exceptions to the unlawful use of weapons statute (720 ILCS 5/24—1(a)(4) (West 1994)). 288 Ill. App. 3d 438. We granted the State's petition for leave to appeal (166 Ill. 2d R. 315(a)) and now affirm the appellate court.

## I. BACKGROUND

The altercation giving rise to this case transpired on September 10, 1995, on the lawn area abutting an apartment building located at 807 South Randolph in Champaign, Illinois. Both defendant and complainant, Chris Darvin, resided in the building. Defendant lived in "unit 3" and Darvin resided in an apartment on the second floor. The State's case consisted of the testimony of Darvin, defendant's friend Amanda Hinkle, and Officer Chase Leonhard. Darvin testified that the two-story apartment building contained eight units, and a balcony that ran the length of the second floor. From the section of the balcony outside his apartment, Darvin could see over bushes onto the lawn area, which also ran the length of the building and extended from the side of the building to the sidewalk. Darvin testified that there was no fence enclosing the lawn area, and that it was commonly used by people to traverse from the street to the apartment building.

At approximately 8:30 on the night of the occurrence, Darvin noticed defendant engaged in an argument with two young males on the lawn area. Darvin testified that he had just moved into the building at that time and had had no prior contact with defendant. Darvin approached defendant and the young males in an effort to break up the fight, but defendant warned him to "stand back and stand fast." As Darvin began backing up towards the building, he saw a gun protruding from the rear waist-

band of defendant's pants. Darvin testified that although he did not hear the entire argument, he heard defendant yell to the boys, "If you have a problem with it, I got something for you." Darvin believed defendant was intoxicated, so he ran up behind defendant and pulled the gun out of his waistband. Defendant and the two boys then fled in opposite directions, and Darvin went to a nearby first-floor apartment and discussed the occurrence with two female occupants. Darvin testified that after about 30 to 45 seconds, defendant emerged from another apartment with an SKS rifle in his hands and ran towards Darvin. Darvin fled around the building in an effort to outrun defendant, while defendant continued chasing Darvin with the rifle. Darvin eventually succeeded in escaping into his own apartment, where his fiancee telephoned the police. The police arrived and placed hand restraints on defendant and Darvin, who still had defendant's .45-caliber semiautomatic pistol. Darvin testified that when he was on the ground in restraints he noticed that defendant's gun was "cocked back" and loaded. Darvin testified that he had seen defendant around the apartment "complex" since the occurrence, but that at the time of the incident, he was unaware defendant lived in the building.

The State then presented the testimony of Amanda Hinkle, who indicated only that she was present in defendant's apartment at the time of the occurrence, and that defendant lived at the apartment building. Finally, Officer Leonhard indicated that he responded to the call regarding the altercation, and testified regarding his search of defendant's apartment and confiscation of the weapons wielded by defendant. The defense rested without presenting any evidence.

Following arguments, the court found defendant guilty of unlawful use of weapons and aggravated assault, sentencing him to 24 months' probation and 150

hours of public service. The appellate court reversed the unlawful use of weapons conviction, finding that the State failed to prove that at the time defendant was observed in possession of the weapon, he was not either "on his land" or in his "fixed place of business" as provided in the exceptions to the unlawful use of weapons statute. 720 ILCS 5/24—1(a)(4) (West 1994).

## II. ANALYSIS

The State initially asserts that it presented sufficient evidence that defendant was not on his land at the time Darvin observed him with the weapon. Section 24—1(a)(4) of the Criminal Code of 1961 provides:

> "(a) A person commits the offense of unlawful use of weapons when he knowingly:
>
> * * *
>
> (4) Carries or possesses *** concealed on or about his person *except when on his land or in his own abode or fixed place of business* any pistol, revolver, stun gun or taser or other firearm ***." (Emphasis added.) 720 ILCS 5/24—1(a)(4) (West 1994).

As can be seen, the legislature has included the above-italicized exceptions within the statutory definition of the offense of unlawful use of weapons. When an exception appears as part of the body of a substantive offense, the State bears the burden of disproving the existence of the exception beyond a reasonable doubt in order to sustain a conviction for the offense. *Cf. People v. Saltis*, 328 Ill. 494, 500-01 (1927); *People v. Chmilenko*, 44 Ill. App. 3d 1060, 1062 (1976); see generally *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975). It is well established that, in sustaining this burden, the State may rely upon circumstantial evidence, as long as it provides proof beyond a reasonable doubt of each element of the crime charged. *People v. Campbell*, 146 Ill. 2d 363, 379 (1992). However, there must be *some* evi-

dence giving rise to a reasonable inference of defendant's guilt; the State may not leave to conjecture or assumption essential elements of the crime. See *In re Whittenburg*, 37 Ill. App. 3d 793, 795 (1976).

In reversing defendant's conviction, the appellate court noted a complete lack of evidence regarding the nature of defendant's interest in the land encompassing the apartment building. The court concluded that, although it was not unreasonable for the trial court to *assume* defendant had no ownership interest in the premises, permitting such an inference without any evidentiary basis would effectively shift the burden to defendant to prove that he was on his land or that he otherwise fell within an exception to section 24—1(a)(4). We agree with the appellate court's reasoning. The sole evidence offered by the State regarding defendant's connection with the property was that he "lived in the building." There was no proof of his interest in his unit or the surrounding land, or as to the ownership of the property in general. Although, on one occasion, Darvin loosely referred to occupants of the building as "tenants," this was insufficient to establish beyond a reasonable doubt defendant's particular interest in the premises.

The State alternatively asserts that, even if defendant did possess some fee interest in the premises, he would still not be protected under the "on his land" exception because the lawn was a common area of the property that was readily accessible to the public and residents of the building. In support of this position, the State points to Darvin's testimony that the lawn area was commonly traversed by people to get to and from their apartments.

In several jurisdictions with statutory language comparable to that of section 24—1(a)(4), courts have construed the phrase "on his own premises" or "on his own lands" to exclude public lands, including those por-

tions of an individual's property which that individual has opened to the public. See, *e.g.*, *State v. Perry*, 120 N.C. 580, 26 S.E. 915 (1897); *Moss v. State*, 65 Ark. 368, 45 S.W. 987 (1898). One court has held that an exception for any individual carrying a weapon on "land possessed by him" did not encompass the common areas of that individual's apartment building or areas of the premises over which the accused lacked "exclusive control and possession." *White v. United States*, 283 A.2d 21, 24 (D.C. 1971); see also *Fortune v. United States*, 570 A.2d 809 (D.C. 1990); *Hines v. United States*, 326 A.2d 247 (D.C. 1974). We find that the interpretation advanced by these courts is not justified under the plain meaning of section 24—1(a). The legislature's intent in enacting a statute must first be ascertained by reference to the statutory language itself. Where an enactment is clear and unambiguous, this court is not at liberty to read into it exceptions, limitations, or conditions that the legislature did not express; nor should this court search for any subtle or not readily apparent intention of the legislature. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). Further, because section 24—1 is a penal statute, it must be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. *Woodard*, 175 Ill. 2d at 444; *People v. Shinkle*, 128 Ill. 2d 480, 486 (1989).

Section 24—1(a)(4) broadly excepts from culpability any individual carrying a weapon while on "his land," meaning land over which he enjoys some ownership interest. There is nothing in the statute limiting the meaning of this phrase based upon the exclusivity of the individual's possession of the land, or the degree of public access he permits on the property. We believe that, had the legislature intended such a restriction, it would have explicitly provided for it. Further, to interpret this

exception as the State suggests would be to expand the scope of the offense of unlawful use of weapons beyond the clear intent of the legislature.

The interpretation proposed by the State is further undermined by section 24—1(a)(10) of the statute, which makes it a criminal offense for an individual to "[carry or possess] *** upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, *** *except when on his land or in his own abode or fixed place of business,* any pistol, revolver, stun gun or taser or other firearm." 720 ILCS 5/24—1(a)(10) (West 1994). This section would permit an individual to carry or possess a firearm even on land classified as "public," as long as that individual had an ownership interest in the property. Seemingly, section 24—1(a)(10) was intended to eliminate any restriction of a person's right to carry a weapon on areas of his property which are readily accessible to or open for use by the public. Construed together, sections 24—1(a)(4) and (a)(10) provide no basis for the interpretation argued by the State. Thus, the State's argument must fail. In light of our decision on this issue, we do not reach the question of whether defendant was in his fixed place of business under section 24—1(a)(4).

### III. CONCLUSION
For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*