THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND WILLIAMS, Defendant-Appellant.

Fourth District    No. 4—04—0050

Opinion filed July 19, 2005.

COOK, P.J., dissenting.

Daniel D. Yuhas and Susan M. Wilham, both of State Appellate Defender's Office, of Springfield, for appellant.

Jack Ahola, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

On August 22, 2003, a jury convicted defendant, Raymond Williams, of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2002)) and resisting a peace officer (720 ILCS 5/31—1 (West 2002)). The trial court sentenced defendant to 10 years' imprisonment. Defendant appeals, arguing (1) the court violated his sixth amendment right to counsel when it denied his motion to reduce his sentence *in camera* without appointing counsel; (2) counsel was ineffective by failing to investigate defendant's claims of police brutality, and therefore, the trial court erred when it denied defendant's posttrial claims of ineffective assistance of counsel; and (3) the State failed to prove defendant had the requisite intent to deliver. We affirm in part, vacate in part, and remand with directions.

On appeal, we first address defendant's argument that he received ineffective assistance of counsel at trial. Specifically, he claims counsel failed to investigate defendant's claims of police brutality, and the issue of police brutality was crucial to the credibility of defendant and the officers' bias and motive to testify falsely. He claims that, because counsel was ineffective, the trial court erred in denying his motion for a new trial. We disagree.

A defendant establishes ineffective assistance of counsel by showing (1) his counsel's representation fell below an objective standard of reasonableness and (2) but for counsel's shortcomings, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255 (1984). The concern is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064. A defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not incompetence. *People v. Coleman*, 183 Ill. 2d 366, 397, 701 N.E.2d 1063, 1079 (1998).

Defendant's testimony at trial was that on the morning of April 19, 2003, he could not sleep and went to get something to eat. After leaving the café, defendant was walking along the curb when the officers approached him, shining lights on him. Defendant testified Officer Williams exited the car and said, "This guy looks like a drug dealer." Defendant testified Officer Williams came up behind him and attempted to reach into defendant's pockets. Officer Williams asked defendant if he had any drugs on him, and defendant replied "no, I don't do none of that stuff like that," to which Officer Williams replied "well, you do now." Defendant testified that, because Officer Williams then tried to put something in defendant's pocket, defendant took off running.

Defendant testified that, after the officers located him in the abandoned garage, he exited the garage with his hands up when so instructed. The officers' testimony at trial was that after defendant failed to exit the garage he was hiding in at the officers' request, Officers Crawford and Williams entered the garage, and Officer Crawford testified that he attempted to kick defendant in the brachial plexus to cause motor dysfunction. Officer Crawford testified that as he attempted this kick, defendant bent his head down and Crawford kicked him in the face. Officer Crawford testified that because defendant continued to resist and he feared defendant might have a weapon, he and Officer Williams continued to use physical force to restrain defendant. When defendant continued to resist, Officer Williams sprayed defendant in the face with OC (oleoresin capsicum) spray, at which time the officers were able to take defendant into custody. Defendant's testimony also described the force used by the officers.

At trial, defense counsel objected when the State attempted to introduce defendant's booking sheet, including a photograph. In making his objection, defense counsel stated, "I don't see how a booking photo is going to add anything to this trial when both sides basically had stated that he was struck numerous times on his body and even in his facial area." Defense counsel then requested, if the booking sheet and photograph were going to be admitted, that he be allowed to go over to the jail and look at the medical records. The trial court denied the State's motion to reopen its case and present the booking sheet and photograph.

On September 4, 2003, defendant filed a *pro se* motion for a new trial, alleging ineffective assistance of counsel. He claimed, *inter alia*, his attorney did not get his medical records, which were relevant and would have proved defendant was telling the truth about being beaten by the officers. On October 15, 2003, the court denied defendant's motion for a new trial, finding defendant's condition at the time of his ar-

rest was not key to the central issue in the case and was "just a side issue."

The officers testified to kicking defendant in the face and beating him in the back and legs. We do not find introducing defendant's medical records into evidence would have affected the outcome of this case. Additionally, as counsel was not ineffective in failing to look at the medical records, the trial court did not err in denying defendant's motion for a new trial on that basis.

Defendant next argues the evidence was insufficient to prove he had the intent to deliver cocaine. Specifically, he claims the amount of cocaine recovered from him was easily within the ability of an addict to consume and the search of his person failed to uncover any indicia of drug dealing, such as weapons, customer lists, or money. We disagree.

The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Schott*, 145 Ill. 2d 188, 203, 582 N.E.2d 690, 697 (1991). Direct evidence of intent to deliver controlled substances is rare, and the intent must usually be proved by circumstantial evidence. *People v. Robinson*, 167 Ill. 2d 397, 408, 657 N.E.2d 1020, 1026 (1995). Therefore, the issue is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded defendant intended to deliver the packets of cocaine he possessed. *Robinson*, 167 Ill. 2d at 407, 657 N.E.2d at 1026.

■ The following factors have been considered by courts as probative of intent to deliver: (1) whether the quantity of controlled substance is too large to be viewed as being for personal consumption; (2) high purity of drug confiscated; (3) possession of weapons; (4) possession of large amounts of cash; (5) possession of police scanners, beepers, or cellular phones; (6) possession of drug paraphernalia; and (7) the manner in which the substance is packaged. *Robinson*, 167 Ill. 2d at 408, 657 N.E.2d at 1026-27. The inference of intent is determined on a case-by-case basis, and the enumerated factors are not exclusive. *People v. Ballard*, 346 Ill. App. 3d 532, 541, 805 N.E.2d 656, 663 (2004). The quantity of controlled substance alone can be sufficient to prove intent to deliver beyond a reasonable doubt, but only where the amount of controlled substance could not reasonably be viewed as intended for personal consumption. *Robinson*, 167 Ill. 2d at 410-11, 657 N.E.2d at 1028.

■ The evidence at trial showed that, on April 19, 2003, Decatur police officers David Crawford and Toby Williams were on gang suppression activity detail in Decatur. At approximately 2:53 a.m., Offic-

ers Crawford and Williams observed defendant walking down the middle of North Illinois Street in Decatur. Officer Williams approached defendant and conducted a pat-down search. Upon patting down defendant, Officer Crawford felt an unknown type of substance that he thought felt like little rock pebbles in defendant's pocket. At that point, defendant took off running. After calling a canine unit, the officers located defendant in an abandoned garage and took him into custody.

Upon searching defendant, Officer Williams found 12 individually packaged rocks in defendant's right front shirt pocket. The rocks weighed 1.6 grams and tested positive for crack cocaine. Officer Williams also found a cellular phone, miscellaneous paperwork, and keys in defendant's pockets.

Defendant argues the amount of crack cocaine recovered from him was well within the ability of an addict to consume. See *Robinson,* 167 Ill. 2d at 413, 657 N.E.2d at 1029 (2.8 grams of cocaine, standing alone, could reasonably be viewed as being for personal consumption). Where the amount of a substance seized may be considered consistent with personal use, an additional factor indicative of delivery is required. *Ballard,* 346 Ill. App. 3d at 541, 805 N.E.2d at 664.

In *Robinson,* 167 Ill. 2d at 415, 657 N.E.2d at 1029, our supreme court reversed the appellate court, finding the First District had improperly reversed the jury's inference of intent to deliver a controlled substance. In doing so, the court noted that "[i]n light of the numerous types of controlled substances and the infinite number of potential factual scenarios in these cases, there is no hard and fast rule to be applied in every case." *Robinson,* 167 Ill. 2d at 414, 657 N.E.2d at 1030. Based on the packaging of the controlled substances, anonymous tips, and the amount of late-night traffic, the supreme court found the evidence presented was sufficient to support an inference of intent to deliver when viewed in a light most favorable to the State. *Robinson,* 167 Ill. 2d at 414, 657 N.E.2d at 1029.

Our supreme court has also noted that, "generally, when a defendant is charged with possession of a controlled substance, *in appropriate circumstances,* packaging alone might be sufficient evidence of intent to deliver." (Emphasis in original.) *Robinson,* 167 Ill. 2d at 414, 657 N.E.2d at 1029. Such circumstances exist in the case at bar.

In the case *sub judice,* defendant possessed 1.6 grams of 12 individually packaged rocks of crack cocaine. Officer Williams testified a search of defendant's person revealed the 12 individually packaged rocks, a cellular phone, keys, and "miscellaneous paperwork." Notably, possession of a cellular phone is one of the factors listed in *Robinson* as probative of intent to deliver. See *Robinson,* 167 Ill. 2d at 408, 657

N.E.2d at 1026-27 (possession of police scanners, beepers, or cellular telephones can be a factor as probative of intent to deliver). Further, no drug paraphernalia associated with the personal use of cocaine were found. See *People v. Beverly*, 278 Ill. App. 3d 794, 802, 663 N.E.2d 1061, 1067 (1996) (intent to deliver proved by evidence indicating possession of cocaine packaged for sale, large amount of cash, and lack of drug paraphernalia for personal use).

The State offered Decatur police officer Edward Root in its case in chief as an expert in narcotics distribution. Officer Root testified the "white rock-like substance" in People's exhibit No. 1 appeared to be crack cocaine. The "plastic bag corners" that were knotted in each of the bags is "a common way that crack cocaine is packaged for sale." The following colloquy took place between the prosecutor and Officer Root:

"Q. Now, based on your expertise, do you have an opinion as to whether the possession of People's [e]xhibit No. 1 is—or do you have an opinion within a reasonable degree of certainty whether People's [e]xhibit No. 1 is consistent with possession or possession with the intent to deliver?

A. Yes, I do have an opinion.

Q. And what is that opinion?

A. It would be that based on my training and experience, it would be the possession with intent to deliver.

Q. And can you describe for the jury what factors you rely upon in making that decision.

A. The main factor I am relying on is the way that it is packaged. If a user were to go out and to get this amount of drug, they are going to get it in, uh, virtually anybody I have ever interviewed has stated that they will get [it] in one bag. It will be one bag with the substance inside of it.

To have it packaged in this manner, it's been packaged for sale as $20 rocks. It would be similar to the fact that if you were going to go out and purchase a gallon of milk, you would not go to the store and purchase four quarts of milk because it is going to cost you a lot more to [buy] that gallon. Drug users want to maximum [*sic*] their money. So, if they are going to buy an amount of drugs like this for sale, they are going [to] buy from a dealer who is selling by weight, and they will buy this same amount for approximately $100; whereas the[ ] way this is packaged up it is meant to be sold for a total of $240."

Officer Root also testified a distributor of crack cocaine would not necessarily have a substantial amount of money on him. Root stated that if "a person was just recently resupplied, he may not have hardly any money on him because he has had to turn over the money that he

had in order to get the new product." In *Ballard,* 346 Ill. App. 3d at 541-42, 805 N.E.2d at 664, this court found the State proved intent to deliver based on the individually packaged units of crack cocaine and the lack of the usual indicators of apartment occupancy. Further, although no cash was found on the defendant, the State presented testimony that drug dealers would not have cash on hand if they had recently purchased a supply of drugs to sell. *Ballard,* 346 Ill. App. 3d at 542, 805 N.E.2d at 664.

Moreover, the police observed defendant walking down the street in the middle of the night in a "high drug-traffic area." When officers approached defendant and conducted a pat-down search, defendant fled. When defendant was eventually apprehended, he was found to be in possession of a cellular phone and 12 individual packages of rock cocaine.

It is up to the State to prove each and every element of the crime charged beyond a reasonable doubt. *People v. Maggette,* 195 Ill. 2d 336, 353, 747 N.E.2d 339, 349 (2001). Officer Root's testimony was admitted into evidence without objection and without contradiction. Defendant chose to take the stand and focus his testimony on police brutality and the alleged planting of the controlled substance upon his person. The jury was entitled to determine the credibility of defendant, draw reasonable inferences from defendant's evidence as well as evidence presented by the State, and render a verdict.

Defendant also argues that the State misled the jury in closing argument by shifting the burden of proof. Specifically, in closing, the prosecutor argued "We know that [the cocaine] was possessed with the intent to deliver because there was not evidence to the contrary. So, what we have got is a dealer amount of cocaine." However, defendant did not make a contemporaneous objection at trial, and he has accordingly waived any argument with respect to these comments. See *People v. Enoch,* 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). Waiver aside, we do not believe this comment was a substantial factor in defendant's conviction. The jury was properly instructed on the burden of proof and that defendant was not required to prove his innocence. The jury was further instructed that closing arguments were not evidence.

■ Defendant's final argument is that the trial court violated his sixth amendment right to counsel when it denied his motion to reduce his sentence *in camera* without appointing counsel. We agree.

A defendant is entitled to the assistance of counsel during all critical stages of the prosecution against him. *United States v. Wade,* 388 U.S. 218, 224, 18 L. Ed. 2d 1149, 1156, 87 S. Ct. 1926, 1931 (1967); *People v. Young,* 153 Ill. 2d 383, 402, 607 N.E.2d 123, 132 (1992). Sentencing is a critical stage of criminal proceedings. *People v. Smith,*

133 Ill. App. 3d 574, 578, 479 N.E.2d 24, 28 (1985). In *Mempa v. Rhay*, 389 U.S. 128, 135, 19 L. Ed. 2d 336, 341, 88 S. Ct. 254, 257 (1967), the Supreme Court observed that a relevant consideration for whether a stage is "critical" is whether the defendant may lose certain rights if not exercised at that stage.

On October 15, 2003, after sentencing defendant, the trial court admonished defendant that, if he desired to challenge his sentence on appeal, he was required to file a motion to reconsider the sentence. The court further advised defendant that, if he was indigent, an attorney would be appointed to assist him in his appeal or motion to reconsider sentence. On November 3, 2003, defendant filed a *pro se* motion for reduction of sentence and an application to proceed as a poor person and for appointment of counsel. In his motion, defendant argued his sentence should be reduced because he is only 19 years old, he needs to care for his sick grandmother, and other people got lighter sentences for seemingly more serious offenses. Nothing in the record indicates that the court appointed counsel for defendant to assist him in his motion to reconsider sentence, and, on January 14, 2004, the court denied defendant's motion for reduction of his sentence by docket entry.

Section 5—8—1(c) of the Unified Code of Corrections (730 ILCS 5/5—8—1(c) (West 2002)) provides that "[a] defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence." The supreme court interpreted section 5—8—1(c) to require a postsentencing motion as a prerequisite to appealing sentencing issues. *People v. Reed*, 177 Ill. 2d 389, 393, 686 N.E.2d 584, 586 (1997). The Second District has held that a hearing on a motion to reconsider sentence is a critical stage of the criminal proceedings, and, as such, a defendant is entitled to the appointment of counsel. *People v. Brasseaux*, 254 Ill. App. 3d 283, 288, 660 N.E.2d 1321, 1324-25 (1996).

Because defendant was required to file a postsentencing motion to preserve any sentencing issues for appeal, this was a critical stage of the criminal proceedings against him. Accordingly, he was entitled to counsel. Therefore, we vacate the trial court's denial of his motion for reduction of sentence and remand for appointment of counsel.

For the reasons stated, we affirm defendant's conviction, vacate the trial court's denial of his motion for reduction of sentence, and remand for appointment of counsel.

Affirmed in part; vacated in part; cause remanded with directions.

TURNER, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent and would reverse the conviction of possession with intent to deliver.

In *Robinson*, 167 Ill. 2d at 407, 657 N.E.2d at 1026, the supreme court rejected the State's argument that a trier of fact can convict anyone possessing a controlled substance of possession with intent to deliver. The quantity of controlled substance alone can be sufficient evidence to prove an intent to deliver. "However, when the amount of substance seized is an amount that may be considered consistent with personal use, our courts have properly required additional evidence of intent to deliver to support a conviction." *Robinson*, 167 Ill. 2d at 411, 657 N.E.2d at 1028.

Some factors, such as a quantity of controlled substance too large to be viewed as being for personal consumption or possession of large amounts of cash, have been identified as being probative of intent to deliver. Other factors are more neutral. The fact that a defendant is found in a "high drug-traffic area," for example, is as consistent with defendant being a purchaser as it is with his being a seller. The same is true of the fact that the incident occurred late at night. I disagree with the majority's argument that all the prosecution has to do is introduce evidence of a few neutral factors and then we will leave the matter to the jury. The State bears the burden of proving each element of the crime charged. In sustaining this burden, the State may rely upon circumstantial evidence, as long as it provides proof beyond a reasonable doubt of each element of the crime charged. However, there must be *some* evidence giving rise to a reasonable inference of the defendant's guilt; the State may not leave to conjecture or assumption essential elements of the crime. *People v. Laubscher*, 183 Ill. 2d 330, 335-36, 701 N.E.2d 489, 491 (1998).

The majority concedes the 1.6 grams of crack cocaine involved here was consistent with personal use. The supreme court in *Robinson* determined that possession of 2.2 grams of PCP and 2.8 grams of cocaine could reasonably be viewed as being for personal consumption. *Robinson*, 167 Ill. 2d at 413, 657 N.E.2d at 1029. The majority also rejects the State's argument that the evidence showed intent to deliver. The State had argued, "[w]e know that it was possessed with the intent to deliver because there was no evidence to the contrary. So, what we have got is a dealer amount of cocaine." Defendant was not required to admit he was a drug user in order to defend against the charge that he was a drug seller.

So what evidence is there of intent to deliver? The majority mentions the fact that this was a "high drug-traffic area." 358 Ill. App. 3d at 1104. As discussed above, that factor is neutral; it is as consistent

with innocence as it is with guilt. The majority mentions that defendant was in possession of a cellular phone, but that also seems innocuous. *Robinson* noted several cases that mentioned cellular phones, but they all seemed to involve additional equipment such as police scanners or beepers. The proliferation of cellular phones is such that the mere possession of one is unlikely to be probative of intent to deliver drugs absent phone records revealing a pattern of short calls or unless defendant had a pager or beeper as well. The majority finds it significant that no drug-user paraphernalia were found on defendant. 358 Ill. App. 3d at 1103. Possession of paraphernalia associated with the sale of drugs is probative of intent to deliver; possession of paraphernalia associated with the use of drugs is probative of personal consumption; possession of neither is probative of nothing.

The key factor for the majority seems to be packaging. The majority cites *Ballard*, 346 Ill. App. 3d at 541-42, 805 N.E.2d at 664, where "this court found the State proved intent to deliver based on the individually packaged units of crack cocaine and the lack of the usual indicators of apartment occupancy." 358 Ill. App. 3d at 1104. In *Ballard*, however, there were 41 packages, totaling more than 13 grams of crack cocaine. *Ballard*, 346 Ill. App. 3d at 535, 805 N.E.2d at 659. In the present case we have 1.6 grams in 12 packages.

Packaging may be probative of intent to deliver in certain cases, such as in *Robinson*, where police found the defendant with 40 individual packets of cocaine and PCP. *Robinson*, 167 Ill. 2d at 403, 657 N.E.2d at 1024 (also citing anonymous tips and the amount of late-night traffic at the defendant's apartment building). But here, 12 packages of a user amount are equally consistent with personal consumption as with intent to deliver. In drug transactions, buyers receive the goods the way they are packaged by sellers. A buyer may ask a seller for as much of the drug as he can get for $100, or perhaps a buyer asks for a particular amount. The seller's division of the controlled substance into several packages allows the seller to negotiate how much the buyer will receive for his $100 without the seller carrying a scales and other equipment on the street with him. It is not logical to assume that a seller will refuse to sell or a buyer will refuse to buy because the amount requested by the buyer is not contained in a single package.

The "expert opinion" of Officer Root that the packaging showed an intent to deliver is not helpful. Officer Root was simply testifying to matters of common sense, making an argument to the jury which the prosecution eventually chose not to make. No previous decision has done what the majority does here: hold that a user amount indicates sale because it is contained in so few packets. The majority's

decision overrules *Robinson*. A jury may now convict anyone possessing a controlled substance of the more serious offense, possession with intent to deliver. Some additional factor can always be found to justify the conviction.