NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190117-U

NO. 4-19-0117

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 17, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| CORDERO E. ALLEN, | ) | No. 16CF861 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Steigmann and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held:*   Defendant's conviction for burglary is reversed because the State did not prove beyond a reasonable doubt defendant did not have authority to be inside the home in question.

¶ 2   In February 2018, a jury found defendant Cordero Allen guilty of burglary. Defendant appeals his conviction, making the following arguments: (1) the State failed to prove beyond a reasonable doubt defendant did not have authority to be inside the home in question; (2) the trial court erred in the manner it admonished all the potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012); (3) the court erred by failing to poll one of the jurors after the jury returned its guilty verdict; and (4) the court erred when it directed the jury not to ask any questions. We reverse defendant's conviction because the evidence in this case was not sufficient to establish beyond a reasonable doubt defendant did not have authority to be in the home in question.

¶ 3                                 I. BACKGROUND

¶ 4         In December 2016, the State charged defendant by information with burglary (720

ILCS 5/19-1(a) (West 2016)), alleging he knowingly and without authority entered a building

owned by Gina S. McGuire in Danville with the intent to commit therein a theft.

¶ 5         Defendant's jury trial began on February 1, 2018.  The State first called Ryan

Grimes, who was a Danville police officer at the time of the alleged offense.  Grimes testified he

responded to a dispatch of a burglary in progress at a home located at 1005 Shasta Drive in

Danville at approximately 3:30 p.m. on December 15.  He parked a block away and walked

toward the home.  He noticed the doors and windows of the house were covered with plywood.

While approaching the south side of the house, he began hearing noises from inside the home.

After walking around the northwest corner of the home, he saw a piece of plywood had been

removed from the walk-in door into the garage.  He approached the door, looked inside, and saw

defendant inside the garage.

¶ 6         Grimes testified he saw defendant moving a stove on a two-wheeled cart, pulling

the stove toward the walk-in door where Officer Grimes was standing.  Grimes backed away

from the door and ordered defendant to the ground when defendant walked out of the garage.

Defendant had neither the stove nor the two-wheeled cart when he exited the garage.

¶ 7         According to Grimes, defendant said the home was his sister's.  Grimes took

defendant into custody.  Grimes then looked around the house and noticed a piece of plywood

had been removed from a window on the east side of the home, and the window was broken.  A

white bucket was underneath the window.  Grimes stated this could indicate someone used the

bucket as a step to get in through the broken window.

¶ 8         On cross-examination, Grimes acknowledged broken glass was in the bottom of

the window frame.  However, Grimes did not notice any cuts or injuries on defendant's hands or any other injuries when he took defendant into custody.

¶ 9    Officer Grimes did not testify he made verbal or physical contact with defendant before defendant walked out of the garage.  The State presented no evidence defendant knew Grimes was outside the house when defendant walked outside empty-handed.

¶ 10    On redirect examination, Officer Grimes stated defendant was moving toward the walk-in door with the stove when Grimes looked in the garage.

¶ 11    Gina McGuire, who the charging instrument alleged was the owner of the home, testified her mother, Priscilla Derrickson, owned the home at 1005 Shasta Drive.  Gina had lived there until 2003.  After she moved out of the home, her brother, Robert McGuire, and his grandson moved into the house.  In October 2016, Robert died suddenly of a brain aneurysm.  Gina took control of Robert's estate after his death and hired a man to board up the house until Priscilla Derrickson was ready to remove the belongings from the house.

¶ 12    Gina testified the house was in a high-crime area.  Two or three days after her brother's death, a neighbor contacted her, indicating someone had walked away with her brother's grill from the front yard of the home.  The neighbor told Gina where the grill was currently located.  Gina testified, "We went back that evening to retrieve the grill and my mom decided that she wanted to keep his belongings safe so she had the windows and the doors boarded until we could remove everything."

¶ 13    After the house was boarded up in October 2016, her brother's former neighbors were watching the house.  On December 15, 2016, Gina was notified of the possible burglary.  She went to the house, and the house was boarded back up.

¶ 14    Gina testified she did not know defendant.  Further, as "executor" of her brother's

estate, she did not give anyone permission to remove the stove or any other property from the home at 1005 Shasta.

¶ 15 On cross-examination, Gina testified she could not be sure if her mother and/or brother knew defendant.

¶ 16 The State rested its case after Gina's testimony.

¶ 17 Defendant moved for a directed verdict, arguing the State failed to prove defendant's entry into the home was without authority because the State did not establish defendant did not have authority to be in the home because the homeowner did not testify. The trial court denied the motion.

¶ 18 Defendant testified on his own behalf that he was living next door to 1005 Shasta Drive at 1007 Shasta Drive with his biological cousin, Dominique Washington. He referred to Washington as his "sister" because her mother had raised them both and he and Washington grew up together. He arrived at 1007 Shasta around 2 or 3 p.m. the day in question. He noticed the door of 1005 Shasta was not boarded up and was open.

¶ 19 According to defendant, he walked over to the open door and saw a stove on a dolly blocking the door from closing. He pushed the oven back into the garage. He then left the garage, leaving the dolly and stove. Before he could close the door, he saw a police officer who told him to freeze. Defendant testified he pointed in the direction of his sister's house next door and said, "[T]his is my sister's home." Defendant denied breaking any windows at 1005 Shasta or going into the home with the thought of stealing anything.

¶ 20 On cross-examination, defendant testified he pushed the stove back into the garage as a "concerned citizen." He admitted he did not call the police to notify them of a possible burglary. He denied telling Officer Grimes he was trying to get into his sister's home.

- 4 -

We note Officer Grimes did not testify defendant said he was trying to get into his sister's home. Defendant was not asked whether anyone had given him authority to be inside the home at 1005 Shasta.

¶ 21	Defendant did not call any other witnesses and again moved for a directed verdict, which the trial court denied. The jury found him guilty.

¶ 22	On February 20, 2018, defendant filed a motion for a new trial. On March 14, 2018, the trial court denied defendant's motion.

¶ 23	On March 27, 2018, the trial court sentenced defendant to 30 months' drug probation and 100 hours of public service work administered by the probation office. Defendant requested the court to prepare a notice of appeal and to appoint an attorney to represent him. The court ordered the clerk to prepare the notice of appeal. However, the notice of appeal was not filed until February 21, 2019.

¶ 24	The Office of the State Appellate Defender (OSAD) filed a motion for a supervisory order with the Illinois Supreme Court. On June 14, 2019, the supreme court directed this court to treat the notice of appeal as a properly perfected appeal from the March 27, 2018, judgment.

¶ 25	As a result, pursuant to the supreme court's order, we consider defendant's appeal.

¶ 26	                                   II. ANALYSIS

¶ 27	We first address defendant's argument the State failed to prove defendant guilty of burglary beyond a reasonable doubt because the State failed to introduce evidence establishing defendant did not have authority to enter the home at 1005 Shasta Drive. To sustain a conviction for burglary as charged by the State, the State had to prove beyond a reasonable doubt defendant

knowingly entered a building without authority with the intent to commit a felony or theft therein. 720 ILCS 5/19-1(a) (West 2016).

¶ 28 "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004), quoting *In re Winship*, 397 U.S. 358, 364 (1970). When determining whether the evidence in a case was sufficient to establish a defendant's guilt beyond a reasonable doubt, a reviewing court considers whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution. *Cunningham*, 212 Ill. 2d at 278, 818 N.E.2d at 307.

¶ 29 This court will not overturn a finding of guilt "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Givens*, 237 Ill. 2d 311, 334, 934 N.E.2d 470, 484 (2010). However, "there must be *some* evidence giving rise to a reasonable inference of defendant's guilt; the State may not leave to conjecture or assumption essential elements of the crime." (Emphasis in original.) *People v. Laubscher*, 183 Ill. 2d 330, 335-36, 701 N.E.2d 489, 491 (1998).

¶ 30 Based on the evidence presented in this case, the State left it to the jury to assume defendant did not have authority to be inside the home. The evidence in this case was insufficient for a rational trier of fact to find beyond a reasonable doubt defendant did not have authority to be in the house.

¶ 31 "Typically, the owner of the burglarized premises testifies that the accused burglar had no authority to enter ***." *People v. Hopkins*, 229 Ill. App. 3d 665, 671, 593 N.E.2d

1028, 1031 (1992). That did not happen in this case. The evidence presented at the trial showed Priscilla Derrickson was the sole owner of the home. The State did not call Derrickson to testify defendant did not have authority to enter the home.

¶ 32 While the State established Gina did not give defendant authority to enter the house, this does not establish beyond a reasonable doubt defendant did not have authority to be inside the house. We note the State does not argue Gina had sole authority or control over the premises pursuant to her role as "executor" of her brother's estate. In fact, on appeal, the State does not address Gina's representation she was the "executor" of her brother's estate.

¶ 33 The State would like this court to hold defendant's testimony established he did not have authority to enter the home because he testified he was acting as a concerned citizen. However, defendant has no obligation to prove his innocence. Instead, the State was required to prove defendant entered the house without authority and with the intent to commit a theft therein.

¶ 34 The State points to the fact the doors and windows of the home at 1005 Shasta Drive were boarded up, a window was broken in the house, and plywood had been removed from one of the doors. However, the State presented no evidence defendant broke the window or entered the house through the window. Further, the State presented no evidence defendant removed the plywood from the door into the garage, and the evidence showed the home was in a high-crime area. Finally, the statement defendant made to the police officer when he was stopped that "this is my sister's house" is weak evidence of defendant's consciousness of guilt because defendant was in fact taken into custody by his sister's house.

¶ 35 Considering all the evidence in a light most favorable to the prosecution, we reverse defendant's conviction. We note defendant did not run from the police officer, he did not remove the stove from the home, he had no wounds indicating he went through the broken

window to get into the house, and he did not have any burglary associated tools on his person.

¶ 36                                    III. CONCLUSION

¶ 37          For the reasons stated, we reverse the trial court's judgment.

¶ 38          Reversed.