**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180671-U

Order filed June 25, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0671 Circuit No. 17-CF-443 |
| | ) | |
| MONTAE A. PRIDE, | ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justices Daugherity and Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: (1) The circuit court did not err in denying defendant's motion to suppress a witness's in-court identification of defendant; and (2) the circuit court did not deprive defendant of his right to counsel.

¶ 2    Defendant, Montae A. Pride, appeals following his convictions for unlawful possession of a weapon by a felon (UPWF) and reckless discharge of a firearm. He argues that the Kankakee County circuit court erred in his denying his motion to suppress a witness's in-court identification

of defendant based on the use of suggestive lineup procedures by the police. He also contends that he was denied his right to counsel at the postsentencing stage of proceedings. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant via indictment with UPWF (720 ILCS 5/24-1.1(a) (West 2016)) and reckless discharge of a firearm (*id.* § 24-1.5). The indictment alleged that defendant, having been previously convicted of a felony, possessed a firearm and discharged it in a manner that endangered the bodily safety of Denzell Leggett.

¶ 5        Prior to trial, defendant filed a motion to suppress the identification testimony of 13 potential witnesses. Defendant alleged in the motion that each witness had been subject to a suggestive and unreliable lineup procedure, in that they had been shown only a single photograph of defendant. The identification testimony of only one of those witnesses, Shaquita Russell, is at issue in this appeal.

¶ 6        At the hearing on defendant's motion, Russell testified that she attended a party on May 28, 2017. She and her cousin arrived early at the party before "very many people [were] there." Russell explained that, ordinarily when she arrived early to parties at the same location, "there's not many people there beside the people that run the house." However, on the day in question, she noticed that three men were sitting in the living room when she arrived, and another man was "outside the house." She had not seen the men prior to that night.

¶ 7        One of the men in the living room was the same person that Russell later observed on the porch. Russell was on the porch when she observed Leggett and the unknown man get "face to face with each other like they were about to get into an argument." Russell saw the man pull out a gun. The woman hosting the party tried to pull the man's arm down, unsuccessfully. The man struck Leggett with the gun, then fired it into the air. Russell then ran away.

¶ 8        Russell testified that the porch was dark, but that she saw enough to know she had to leave the area. She could not remember how much time had elapsed between seeing the man in the living room before the party and the incident on the porch. Over the course of the evening, Russell had seen him "quite a few times" in the living room, as she went in and out of the house. She recalled that the man was wearing "all white." When asked whether she recognized the man as the same person each time she saw him Russell responded: "He was the only one in all white. That's the only reason why he stood out."

¶ 9        With respect to her interview with police, Russell agreed that she had only been shown one photograph. She identified the person in the photograph as the person involved in the altercation with Leggett. When asked at the hearing whether she remembered the events in question prior to speaking to police, Russell responded: "I remember what happened while I was outside, yeah."

¶ 10       A portion of Russell's video-recorded interview was played in court. The video shows Russell providing a detailed accounting of events of the evening for Kankakee Detective Joseph Martinez. The account was similar to the testimony she provided at the hearing. Russell described the man arguing with Leggett as wearing "all white" and "light-skinned, with some dreads." He was wearing a baseball cap. Russell further explained:

> "The only reason I remember his face is because when I first came in he was sitting at the table with a hat on, and he didn't move the entire night. He stayed there in that one spot the entire night before this altercation. So that's the only reason why I remember, and he stuck out to me."

Russell added that the man did not try to dance or speak to anyone, stating: "He just sat there." Russell also provided a detailed description of where Leggett and the man were standing with respect to the porch at the time of the altercation. Approximately 18 minutes into the interview,

while showing Russell the photograph, Martinez states: "I'm going to show you a picture that might help identify this guy. Or at least if you recognize this guy as being at the party that day." Martinez shows Russell the photograph, and Russell states: "That's the guy that had on all white." She adds: "He was short, too. That's him." The photograph shows a man from approximately the chest up; the man has dreadlocks. We note that the complexion of the man is difficult to discern from the black and white photograph included in the record.

¶ 11    Martinez testified that he conducted the interview with Russell on July 14, 2017. During the course of the interview, he showed Russell a photograph of defendant. He did not show her a photo array.

¶ 12    Following the presentation of evidence, the State conceded that Martinez had not complied with statutorily mandated procedures in showing Russell, and other witnesses, a single photograph instead of a photo array. Accordingly, the court found that Martinez had employed a "suggestive procedure," and suppressed any evidence of the identifications made by witnesses in the presence of Martinez.

¶ 13    The court then turned to the question of whether an independent basis existed for allowing the witnesses to identify defendant in court, or, whether "the out-of-court identifications [were] so tainted that an in-court identification should not be permitted." The court noted that for the purposes of that question, the burden shifted to the State. In a subsequent written order, the court found that an independent basis existed for allowing Russell's in-court identification. The court also allowed the in-court identification of two other witnesses.

¶ 14    At defendant's bench trial, Russell testified in accordance with her testimony at the prior hearing. When she arrived at the house with two cousins, only five other people were present: the woman throwing the party, a man Russell was familiar with, and the group of three men. Russell

4

identified defendant as being among the group of three men. Russell again testified that she saw defendant "quite a bit" over the course of the evening. She estimated that she saw him more than five times. Russell agreed that the altercation between defendant and Leggett occurred around 3:30 a.m. Russell estimated that she arrived at the party between 11 p.m. and 12 a.m.

¶ 15 Russell explained that the altercation was not on the porch itself, but in front of it, on the street level. She was on the porch, and thus witnessed the altercation from a higher vantage point. The porch had a light, which was on at the time of the altercation. Streetlights on the other side of the street were also on. Russell's view of the altercation was clear and unobstructed. The incident lasted approximately 45 seconds to a minute.

¶ 16 On cross-examination, Russell testified that she had had "[a] little bit but not much" to drink that night. She denied that the alcohol she drank impaired her ability to observe or recall the events of the night. She did not consume any drugs.

¶ 17 Defendant testified that he was wearing black pants and a colored shirt on the night in question. He denied being involved in an altercation with Leggett.

¶ 18 At a later date, the court found defendant guilty of the charged offenses. The court pointed out that three trial witnesses identified defendant. It opined that "the strongest identification comes from *** Russell." The court continued: "I thought her testimony was actually perhaps the strongest. But she was at the party from the beginning, and she described how she had an opportunity to view the defendant throughout the evening."

¶ 19 Defendant filed a motion for new trial, arguing, *inter alia*, that the court had erred in admitting Russell's identification testimony. The court denied the motion.

¶ 20       Defendant presented several witnesses at his sentencing hearing. The court ultimately sentenced him to terms of 140 months' imprisonment for UPWF and 36 months' imprisonment for reckless discharge of a firearm, to be served concurrently.

¶ 21       Following the pronouncement of sentence, defense counsel indicated that she was moving to withdraw and that defendant would be requesting appointment of the public defender. The court asked defendant if he wished to "appeal the sentence" he had received, and defendant responded affirmatively. The following colloquy ensued:

> "THE COURT: *** [D]efense counsel can you remain in for filing a motion to reconsider? I mean if you wish to make—are you—are you making a motion to reconsider sentence at this time?
>
> [DEFENSE COUNSEL]: *** [Y]ou know, I'm not sure at this point and that's why it's necessary for us to get out so that he can obtain counsel who will be able to preserve all his rights post-conviction or appeal [*sic*].
>
> THE COURT: Well, but I mean I don't want to bring somebody in who's unfamiliar with the circumstances. I assume that you are disagreeing with the *** sentence today? You had asked for three years, correct?"
>
> [DEFENSE COUNSEL]: Right. That's correct.
>
> THE COURT: All right. Show that the defense moves for reconsideration of the sentence. Court denies the reconsideration."

The court then appointed the appellate defender and ordered a notice of appeal filed on defendant's behalf. The court asked defendant if that was "okay," and defendant responded affirmatively.

¶ 22                           II. ANALYSIS

¶ 23    On appeal, defendant argues that the circuit court erred in finding an independent basis for Russell's identification, thus allowing her to identify defendant in court. He also argues that the court deprived him of his sixth amendment right to counsel when it allowed counsel to "effectively withdr[a]w" at the postsentencing stage of proceedings and did not appoint new counsel.

¶ 24                                    A. Identification Testimony

¶ 25    A lineup procedure is suggestive where it unnecessarily highlights the person to be identified or the person to be identified appears alone. *E.g.*, *Stovall v. Denno*, 388 U.S. 293, 302 (1967) ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."). Such procedures create a risk that "the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Simmons v. United States*, 390 U.S. 377, 383-84 (1968). Stated differently, the concern is that a trial witness will not identify a defendant as the person actually seen in relation to the offense, but as the person seen in the lineup.

¶ 26    Where a suggestive lineup procedure gives rise to a substantial likelihood of misidentification, the admission of an in-court identification is a violation of a defendant's right to due process. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). Thus, in cases in which a suggestive lineup has been employed, the central question is whether, under the totality of the circumstances, the identification was nevertheless sufficiently reliable to allow the witness to make an in-court identification. *Id.* at 199. A substantial risk of misidentification does not exist where a separate reliability exists for the identification, independent of the suggestive lineup. *People v. McTush*, 81 Ill. 2d 513, 521 (1980).

7

¶ 27    On a motion to suppress identification, a defendant bears the initial burden of demonstrating that an impermissibly suggestive lineup procedure was employed. *Id.* at 520. If the defendant makes such a showing, the burden shifts to the State to prove by clear and convincing evidence that the witness is identifying the defendant solely on the basis of her independent memory of the events surrounding the offense. *Id.* Further, where a motion to suppress is renewed after trial, both the circuit court, and, in turn, the reviewing court, may consider any trial evidence in addition to the evidence presented at the original hearing. *People v. Gill*, 2018 IL App (3d) 150594, ¶ 76.

¶ 28    As it did below, the State on appeal concedes that Martinez employed a suggestive lineup procedure in showing Russell only a single photograph. See *Stovall*, 388 U.S. at 302. Thus, the only issue to be decided is whether the State proved by clear and convincing evidence that an independent basis existed for Russell's in-court identification of defendant. In addressing that issue, we defer to the circuit court's findings of fact, but review *de novo* the court's ultimate conclusion that the in-court identification would be admitted. *People v. Jones*, 2017 IL App (1st) 143766, ¶ 29.

¶ 29    Factors relevant to a determination of whether an independent basis for an in-court identification exists include:

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200.

8

Additionally, any acquaintance between the witness and the suspect prior to the crime may be relevant to the witness's ability to produce a reliable identification. *McTush*, 81 Ill. 2d at 521.

¶ 30 The first two listed factors strongly favor a finding of an independent basis for Russell's identification. It is highly relevant that the altercation between defendant and Leggett was not the first time Russell had seen defendant. Russell first saw defendant when she arrived early at the house. At that time, the scene was not chaotic or boisterous. On the contrary, Russell testified that defendant was one of only a few people in the house. Russell testified at the hearing that she saw defendant "quite a few times" over the course of the night. At trial, she testified that she saw defendant "quite a bit" that night. Before Martinez showed Russell the photograph, Russell told him that defendant "stuck out" to her at the party because of his odd behavior and because of his all-white outfit. Thus, not only did Russell have ample opportunity to observe defendant prior to the actual altercation with Leggett, but she also apparently paid special attention to defendant in that time.

¶ 31 Moreover, Russell's detailed account, given on three separate occasions, makes clear that she was paying especially close attention to the altercation itself as it played out. While Russell agreed that the area was generally dark, she gave no indication that the lighting hampered her observations in any way.

¶ 32 Next, Russell apparently gave Martinez an accurate description of defendant prior to being shown the photograph. In addition to noting his all-white outfit on the night of the party, Russell described the person involved in the altercation as having dreadlocks, being "light-skinned," and being short.[1] To be sure, this court is only able to confirm the first of those descriptors, as the

---

[1]We recognize that Russell's description of defendant as being short actually occurred immediately after she saw the photograph. However, as the photograph only shows a man from the chest

9

photograph of defendant on the record shows him to have dreadlocks. While we cannot discern from the chest-up, black and white photograph whether defendant is "light-skinned" or short, the circuit court *was* in a position to judge the accuracy of those descriptions. We infer that the court found Russell's description to be accurate, given that the court ultimately admitted her identification.

¶ 33 Further, Russell was not at all uncertain when she identified the photograph shown to her as the person involved in the altercation. Her response, tendered immediately, was: "That's the guy that had on all white." More generally, Russell was highly certain of her recollection of the night in question, explaining the evening in great detail for Martinez.

¶ 34 With regard to the final two factors, we agree that the 49 days that elapsed between the events in question and Russell's interview with Martinez represents a significant amount of time, and that Russell and defendant had no relationship or acquaintanceship prior to the night in question. Nevertheless, we find that these factors do not outweigh the strength of the other four. Accordingly, we conclude that the State proved by clear and convincing evidence that an independent basis for Russell's in-court identification of defendant existed.

¶ 35 B. Postsentence Proceedings

¶ 36 A criminal defendant is entitled to the representation of counsel at all critical stages of proceedings. *People v. Young*, 153 Ill. 2d 383, 402 (1992); U.S. Const., amend. VI. Illinois courts have recognized that the filing of a postsentence motion is a critical stage. *People v. Burnett*, 385 Ill. App. 3d 610, 619 (2008) (finding that the resolution of a motion to reconsider sentence "is a critical stage because legal rights on appeal—the right to challenge the sentence—can be lost or

---

up, and is in no way demonstrative of the man's height, that particular memory was plainly not suggested by the photograph.

limited."); *People v. Williams*, 358 Ill. App. 3d 1098, 1105 (2005) ("Because defendant was required to file a postsentencing motion to preserve any sentencing issues for appeal, this was a critical stage of the criminal proceedings against him.").

¶ 37　　　　Defendant argues that counsel "effectively withdrew" from representation prior to the filing of a motion to reconsider sentence. He contends that the circuit court's decision to decline appointment of the public defender "affirmatively deprived defendant of his right to counsel during a critical stage." Defendant acknowledges that he failed to properly preserve the instant issue, but requests that we review it under the rubric of plain error. As the first step of any plain error analysis is a determination as to whether a clear error was committed, we begin there. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 38　　　　We disagree with defendant's characterization of the proceedings below. Counsel did not withdraw from her representation of defendant, effectively or otherwise. Indeed, the court expressed reservations about appointing new counsel at such a late stage, and never allowed counsel to withdraw. As a solution, the court construed counsel's disagreement with the sentence as an oral motion to reconsider the sentence, then denied that motion. See *People v. Davis*, 356 Ill. App. 3d 725, 731 (2005) (noting that the requirement of written motion for preservation of issues on appeal "is waived where defendant makes an oral motion to reconsider his sentence and the State does not object."). Thus, defendant was represented by counsel who made what the court construed as an oral motion to reconsider defendant's sentence. Defendant was present and represented when that motion was denied. We therefore find that the court did not deprive defendant of his right to counsel and that no clear error was committed.

¶ 39　　　　In reaching this conclusion, we recognize that the oral motion to reconsider sentence was not substantial. It raised no more than counsel's disagreement with the sentence and could at most

11

be construed as incorporating counsel's prior arguments at sentencing. While the sufficiency of the motion may raise concerns about the effectiveness of counsel's representation, it does not speak to the *existence* of her representation. Defendant has declined to raise an ineffective assistance of counsel argument.

¶ 40                                    III. CONCLUSION

¶ 41          The judgment of the circuit court of Kankakee County is affirmed.

¶ 42          Affirmed.